KEKER, VAN NEST & PETERS LLP
MATAN SHACHAM - # 262348
mshacham@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant FACEBOOK, INC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADRIENNE SEPANIAK KING and CHRISTOPHER EDWARD SEPANIAK KING,<br><br>              Plaintiffs,<br><br>     v.<br><br>FACEBOOK, INC.,<br><br>              Defendant. | Case No. 3:21-cv-04573-EMC<br><br>**DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:           October 7, 2021<br>Time:          1:30 p.m.<br>Courtroom: 5<br><br>Judge:         Hon. Edward M. Chen<br><br>Date Filed: June 14, 2021<br><br>Trial Date:  None set |

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on October 7, 2021, at 1:30 p.m., or as soon thereafter as this matter may be heard before the Honorable Judge Edward M. Chen, United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Facebook, Inc. will and hereby does move this Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims filed against it by Plaintiffs Adrienne Sepaniak King and Christopher Edward Sepaniak King on the grounds that Plaintiffs fail to state a claim upon which relief can be granted and Plaintiffs' claims are barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the request for judicial notice and supporting declaration filed concurrently herewith, the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated:  August 30, 2021                    KEKER, VAN NEST & PETERS LLP

                                           By: /s/ Matan Shacham
                                               MATAN SHACHAM

                                           Attorneys for Defendant FACEBOOK, INC

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..................................................................................1

I. INTRODUCTION .................................................................................................2

II. BACKGROUND ...................................................................................................2

III. ARGUMENT.........................................................................................................3

    A. The Complaint Fails to State any Cause of Action against Facebook. ....................3

        1. Ms. King fails to state a claim for breach of contract. ...............................3

        2. Ms. King fail to state a claim for intentional infliction of emotional distress.........................................................................................................6

        3. Ms. King fail to state a claim for negligent infliction of emotional distress.........................................................................................................7

        4. Ms. King has no cognizable claim under the CDA. ...................................9

        5. Mr. King's claims also fail..........................................................................9

    B. Plaintiffs' Claims are Barred by Section 230(c)(1) of the CDA............................10

        1. Facebook is a provider of an interactive computer service........................11

        2. The content at issue was provided by someone other than Facebook. ......12

        3. Plaintiffs' claims seek to treat Facebook as a publisher of the content at issue. ........................................................................................12

IV. CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barnes v. Yahoo! Inc.*,
 570 F.3d 1096 (9th Cir. 2009) ....................................................................................10, 13

*Belknap v. Alphabet, Inc.*,
 504 F. Supp. 3d 1156 (D. Or. Dec. 1, 2020) ..............................................................................9

*Brittain v. Twitter, Inc.*,
 2019 WL 2423375 (N.D. Cal. June 10, 2019) ......................................................8, 11, 12, 13

*Brittell v. Young*,
 90 Cal. App. 3d 400 (1979) ......................................................................................................9

*Caraccioli v. Facebook, Inc.*,
 167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.
 2017) ................................................................................................................................ *passim*

*Carafano v. Metrosplash.com, Inc.*,
 339 F.3d 1119 (9th Cir. 2003) ................................................................................................10

*Christensen v. Super. Ct.*,
 54 Cal. 3d 868 (1991) ...............................................................................................................7

*Cross v. Facebook, Inc.*,
 14 Cal. App. 5th 190 (2017) ...................................................................................................11

*Davenport v. Litton Loan Servicing, LP*,
 725 F. Supp. 2d 862 (N.D. Cal. 2010) ......................................................................................6

*Davis v. Maryland Bank*,
 2002 WL 32713429 (N.D. Cal. June 19, 2002) ........................................................................9

*Ebeid v. Facebook, Inc.*,
 2019 WL 2059662 (N.D. Cal. May 9, 2019) ................................................................. *passim*

*Eidson v. Medtronic, Inc.*,
 40 F. Supp. 3d 1202 (N.D. Cal. 2014) ....................................................................................10

*Erlich v. Menezes*,
 21 Cal. 4th 543 (1999) ..............................................................................................................8

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) (en banc) ................................................................................13

*Fed. Agency of News LLC v. Facebook, Inc.*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...............................................................................13

*Ferretti v. Pfizer Inc.*,
   855 F. Supp. 2d 1017 (N.D. Cal. 2012) .................................................................................7

*Fields v. Twitter, Inc.*,
   200 F. Supp. 3d 964 (N.D. Cal. 2016) .................................................................................10

*Foley v. Bates*,
   2007 WL 1430096 (N.D. Cal. May 14, 2007) .......................................................................8

*Golden W. Baseball Co. v. City of Anaheim*,
   25 Cal. App. 4th 11 (1994) ....................................................................................................5

*Hickman v. Sofamor-Danek Grp., Inc.*,
   1999 WL 606690 (N.D. Cal. Feb. 17, 1999) .......................................................................10

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) .....................................................................................................6, 7

*Igbonwa v. Facebook, Inc.*,
   2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ........................................................................11

*King v. Facebook, Inc.*,
   2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ..........................................................10, 11, 13

*King v. Facebook, Inc.*,
   2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) .....................................................................4, 5

*Lancaster v. Alphabet Inc.*,
   2016 WL 3648608 (N.D. Cal. July 8, 2016) .............................................................6, 11, 12

*Leonard v. John Crane, Inc.*,
   206 Cal. App. 4th 1274 (2012) ..............................................................................................9

*Levitt v. Yelp! Inc.*,
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ......................................................................11

*Milne Emps. Ass'n v. Sun Carriers, Inc.*,
   714 F. Supp. 1028 (N.D. Cal. 1989), *reversed in part on other grounds*, 960
   F.2d 1401 (9th Cir. 1991) ......................................................................................................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ...............................................................................................11

*Perez v. LinkedIn Corp.*,
   2021 WL 519379 (N.D. Cal. Feb. 5, 2021) ...........................................................................6

*Perfect 10, Inc. v. CCBill LLC*,
  481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007) ...................................................................................10

*Potter v. Firestone Tire & Rubber Co.*,
  6 Cal. 4th 965 (1993) ..................................................................................................7, 8

*Riggs v. MySpace, Inc.*,
  444 F. App'x 986 (9th Cir. 2011) ..................................................................................13

*Saponaro v. Grindr, LLC*,
  93 F. Supp. 3d 319 (D.N.J. 2015) ..................................................................................11

*Schneider v. TRW, Inc.*,
  938 F.2d 986 (9th Cir. 1991) ...........................................................................................7

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015), *affirmed sub nom, Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F.App'x 526 (9th Cir. 2017) ...........................................................11

*Tamarind Lithography Workshop, Inc. v. Sanders*,
  143 Cal. App. 3d 571 (1983) ...........................................................................................5

*Tuttle v. Chase Ins. Life & Annuity Co.*,
  2007 WL 2790359 (N.D. Cal. Sept. 20, 2007) ................................................................8

*Young v. Facebook, Inc.*,
  2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ..............................................................4, 8

*Young v. Facebook, Inc.*,
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...........................................................................3

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) .........................................................................................12

**Statutes**

47 U.S.C. § 230 ................................................................................................2, 3, 9, 11, 12, 13

Communications Decency Act Section 230(c)(1) ................................................................ *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

Plaintiffs Adrienne Sepaniak King (hereinafter "Ms. King") and Christopher Edward Sepaniak King (hereinafter "Mr. King") allege that Facebook, In. ("Facebook") wrongfully disabled Ms. King's account on the Facebook service (the "Facebook account"). Plaintiffs seek tens of thousands of dollars in damages and a court order forcing Facebook to reinstate Ms. King's Facebook account and permanently enjoining Facebook from ever disabling her account in the future without first providing its reasons for doing so. The court should dismiss this action with prejudice two reasons:

*First*, Plaintiffs have failed to allege facts sufficient to support any cause of action. Plaintiffs do not identify any contractual provision in Facebook's Terms of Service or any cognizable duty in tort that Facebook breached. In fact, Facebook's Terms of Service expressly permit it to suspend or permanently disable accounts—the very conduct upon which all of Plaintiffs' claims are based.

*Second*, all of Plaintiffs' claims are barred by Section 230(c)(1) of the Communications Decency Act ("CDA"), which immunizes interactive service providers like Facebook from claims based on removal of user content from its platform. 47 U.S.C. § 230. The Complaint on its face satisfies all the requirements for Section 230(c)(1) immunity.

II.  **BACKGROUND**

Ms. King alleges that she established a personal Facebook account "approximately ten years ago" which she used to share political, personal, and other material with her network of friends on the platform. *See* Complaint ("Compl."), ¶¶ 12-14. She alleges she used the platform to share and discuss material "from a conservative point of view[.]" *Id.* ¶ 14. On or about November 17, 2020, Ms. King discovered that she could no longer access her Facebook account. *Id.* ¶ 15. Plaintiffs allege that Facebook notified Ms. King that her account had been disabled because "it did not follow [Facebook's] Community Standards." *Id.* ¶¶ 16-17. Even with assistance from Mr. King, she was unable to reinstate the account. *Id.* ¶¶ 15-19.

On June 14, 2021, Plaintiffs filed their Complaint against Facebook. The thrust of Plaintiffs' Complaint—and the purported basis for each cause of action—is an allegation that Facebook

unfairly disabled Ms. King's Facebook account for violating its Terms of Service and failed to adequately provide any basis for its decision to do so. *See id.* at ¶¶ 15-17, 20.

Ms. King assert five causes of action against Facebook: 1) breach of contract; 2) "violation of 47 U.S.C. 230(c)(2)(A);" 3) intentional infliction of emotional distress, 4) negligent infliction of emotional distress, and 5) declaratory and injunctive relief. Mr. King also brings a single cause of action for intentional and/or negligent infliction of emotional distress and loss of consortium. Plaintiffs seek a declaratory order against Facebook "regarding its abuse of the CDA and the application of Facebook's Community Standards," as well as injunctive relief reinstating Ms. King's Facebook account and enjoining Facebook from further action against Ms. King regarding her account. *Id.* ¶ 3. Each Plaintiff also asks for damages in excess of $75,000. *Id.*

## III. ARGUMENT

### A. The Complaint Fails to State any Cause of Action against Facebook.

#### 1. Ms. King fails to state a claim for breach of contract.

Plaintiffs allege that that "[t]he establishment of the King Facebook Account by [Ms. King] with Facebook constituted a contract between King and Facebook pursuant to the provisions of Facebook's Terms of Service." *Id.* ¶ 12. Plaintiffs contend that Facebook "breached its contract with [Ms. King] by disabling the King Facebook Account because King did not breach any of the terms of the contract with Facebook and did not violate any of the terms of the contract as set out in Facebook's Terms of Service and King did not violate any of Facebook's Community Standards." *Id.* ¶ 30. Essentially, Plaintiffs argue that Facebook was contractually obligated not to remove Ms. King's content from its platform unless Ms. King was in violation of the contract. Even accepting the allegation as true, the Complaint fails to state any plausible claim for breach of contract for four reasons.

*First*, the Complaint fails to identify any term in any Facebook contract with Ms. King that Facebook violated. "To properly plead breach of contract, '[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant.'" *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (*citing Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012); *see also Young v. Facebook,*

*Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) ("In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached."). Plaintiffs do not identify *any contractual provision whatsoever* in their Complaint—and they certainly do not identify any provision obligating Facebook not to remove her content from its platform unless the content violates the Community Standards. *See Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing breach of contract claim in part because the Complaint "[did] not allege which contract Facebook allegedly breached, much less the breach of a specific provision therein"); *King v. Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019) (dismissing breach of contract claim because plaintiff failed to identify the specific provision of the contract allegedly breached by defendant).

**Second**, Plaintiffs cannot identify a term in Facebook's Terms of Service that Facebook violated because there is no term in Facebook's Terms of Service requiring Facebook to maintain content on its platform. To the contrary, Facebook's Terms of Service—which were effective in November 2020, when Ms. King alleges her account was disabled, *see* Compl. ¶ 15—state as follows: "***If we determine*** that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, ***we may suspend or permanently disable access to your account***." Decl. of Jenny Pricer in Support of Facebook, Inc.'s Request for Judicial Notice, Ex. A Section 4.2 (emphasis added); *see also* Facebook, Inc.'s Request for Judicial Notice (setting forth basis for judicial notice of the Terms of Service). Thus, while Plaintiffs may believe that Facebook misapplied its Terms of Service or failed to communicate with her, Facebook's disabling her account cannot, as a matter of law, give rise to liability for breach of contract. *See Ebeid*, 2019 WL 2059662, at *7 (dismissing breach of contract claim, among other reasons, because "plaintiff does not allege that Facebook failed to perform its obligations under the contract").

**Third**, courts have repeatedly rejected similar contract claims based on Facebook's Terms of Service. "[C]ourt[s] ha[ve] correctly recognized [that], while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations'" by Facebook not to remove content from its platform. *Caraccioli*, 167 F. Supp. 3d at 1064; *see also Young v.*

*Facebook, Inc.*, 2010 WL 4269304, at *3 n.6 (N.D. Cal. Oct. 25, 2010) ("While the Statement of Rights and Responsibilities indicates that it 'derives from the Facebook Principles,' the Facebook Principles do not create legal obligations or grant a user the right to enforce those principles in court."); *King*, 2019 WL 6493968, at *2 ("[T]here is nothing in the Terms of Use or other contract identified by King that could plausibly support a breach claim."). Nothing in Facebook's Terms of Service creates any affirmative obligation to Ms. King to maintain her content or profile on the platform.

**Fourth**, Plaintiffs have failed to allege any damages caused by the purported breach. Plaintiffs do not articulate how Facebook caused any pecuniary harm through its application of its Terms of Service. *See Ebeid*, 2019 WL 2059662, at *8 (dismissing breach of contract claims against Facebook where "plaintiff does not allege that he was charged for ads that were not boosted" and "plaintiff's counsel [at the hearing] was unable to articulate an alternative basis for harm tied to Facebook's alleged failure to adequately boost plaintiff's posts").

Instead, Plaintiffs allege that they were harmed when Ms. King's Facebook account was permanently disabled and ask for widespread injunctive relief that would require Facebook to reinstate her Facebook account. Compl., ¶¶ 26, 53 (asking the court to order that Facebook "reinstate the King Facebook Account in toto" [*sic*]). Plaintiffs define harm as "emotional distress, extreme emotional distress, serious emotional distress, and severe emotional distress" relating to Ms. King losing her contacts and photographs shared with family and friends. *Id.* ¶ 26.

However, under California state law, "[a]n injunction to enforce the terms of a contract may only be issued if the contract is specifically enforceable." *Golden W. Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 49-50 (1994) (citing Cal. Civ. Proc. Code §§ 3423(e); 526(b)(5)). Moreover, specific performance of a contract is only available to a plaintiff if the plaintiff can establish (1) the contract's terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is a mutuality of remedies; and (5) plaintiff's legal remedy is inadequate. *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983).

Plaintiffs fail to allege that any of these circumstances exist in the present case. First,

Plaintiffs fail to allege that the terms of the purported contractual provision on which they rely are definite because, as discussed above, Plaintiffs cannot even identify the existence of such a term, nor its language. Second, there is no similarity between the contract's terms and the requested performance—Plaintiffs point to no provision in Facebook's Terms of Service requiring Facebook to maintain the content or profiles of its users. Third, Plaintiffs allege no facts to support a conclusion that there is a mutuality of remedies or that money damages would be inadequate. Because Plaintiffs fail to allege facts to support their requests for an injunction or declaratory relief, they fail to assert any cognizable remedy that would support their breach of contract claim.

### 2. Ms. King fail to state a claim for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress ("IIED") under California law, a plaintiff must plead: "(1) defendant's extreme and outrageous conduct; (2) that defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress; (3) that plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 883-84 (N.D. Cal. 2010).

Ms. King's claim fails for three reasons.  **First**, she does not plead facts sufficient to meet the high standard for "outrageous" conduct. Outrageous conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davenport*, 725 F. Supp. 2d at 884 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)). Plaintiffs allege in conclusory fashion that "Facebook's conduct in permanently disabling [Ms.] King's Facebook Account, in refusing to state how King allegedly violated Facebook's 'Community Standards,' in refusing to discuss the matter with King, and in destroying all of the material contained on, with, or under the King Facebook Account was outrageous." Compl., ¶ 40. But "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not meet the standard of outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009). Moreover, courts have held that a "private party simply choosing to not provide access to its platform"—the very basis of Plaintiffs' claims here—"does not meet the threshold of extreme conduct exceeding the boundaries of a civilized society." *Perez v. LinkedIn Corp.*, 2021 WL 519379, at *3 (N.D. Cal. Feb. 5, 2021) (quotations

omitted); *see also Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (holding that incidents perceived to display mere rudeness or insensitivity do not rise to the level of outrageous conduct). Far from being "extreme and outrageous," the alleged conduct is expressly permitted by Facebook's terms of service and federal law (as explained above).

**Second**, Plaintiffs have not shown that Facebook intended to cause, or recklessly disregarded, the probability of causing emotional distress. Plaintiffs allege that an unidentified Facebook employee said that Ms. King's situation might not be "very satisfactory," Compl., ¶ 19, but they do not allege any facts indicating that Facebook acted intentionally or recklessly disregarded the probability of causing severe emotional distress. *Caraccioli*, 167 F. Supp. 3d at 1064 (dismissing claim for intentional infliction of emotional distress where plaintiff failed to show Facebook acted intentionally in initially declining to remove content); *see also Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991) (providing that, to prove intentional infliction of emotional distress, the plaintiff must show the defendant acted intentionally).

**Finally**, Plaintiffs fail to allege that they have met the "high bar" for suffering "severe or extreme emotional distress" as a matter of law. *Hughes*, 46 Cal. 4th at 1051. Ms. King alleges that losing access to her Facebook contacts and content has caused her "great distress, embarrassment, and humiliation[.]" *See* Compl. ¶ 25. She also alleges "intense and enduring" feelings of "anger, fear, horror, shock, grief, shame, humiliation, embarrassment, chagrin, disappointment, worry, nervousness, anxiety, and nausea" associated with Facebook's actions. *Id.* ¶ 26.  But, under California law, distress must be so substantial "that no reasonable [man] in [a] civilized society should be expected to endure it." *Potter*, 6 Cal. 4th at 1004. Plaintiffs' conclusory allegations simply do not rise to this level. *See Hughes*, 46 Cal. 4th at 1051 ("discomfort, worry, anxiety, upset stomach, concern, and agitation" was insufficiently severe); *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1029 (N.D. Cal. 2012) (finding that besides alleging "concerns," Plaintiff "[had] not alleged any facts to [] support conclusory allegation[s] that she suffered severe emotional distress").

      **3.**      **Ms. King fail to state a claim for negligent infliction of emotional distress.**

"Negligent infliction of emotional distress is a species of negligence, which under California law has three elements: (1) the defendant owed a legal duty to use due care, (2) a breach

7

of that duty, and (3) the breach was the proximate or legal cause of the resulting injury." *Caraccioli* 167 F. Supp. 3d at 1064 (citing *Huggins v. Longs Drugs Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993); *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996)).

Plaintiffs' cause of action for negligent infliction of emotional distress ("NIED") fails for two reasons. First, the Complaint fails to plead any plausible basis for a duty owed by Facebook to Ms. King to not disable her account. It is Plaintiffs' burden to plead facts establishing the existence of a duty. *See Tuttle v. Chase Ins. Life & Annuity Co.*, 2007 WL 2790359, at *3-4 (N.D. Cal. Sept. 20, 2007). But the Complaint fails to allege that Facebook owed plaintiffs any duty whatsoever, much less any facts that would establish the existence of such a duty. *Foley v. Bates*, 2007 WL 1430096, at *7 (N.D. Cal. May 14, 2007).

Furthermore, under California law, there is no duty to avoid negligently causing emotional distress to another. *Potter*, 6 Cal. 4th at 984-85 (1993) ("[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.").

To the extent that Plaintiffs' theory is that a duty to Ms. King arises out of Facebook's Terms of Service, courts have rejected that theory. *See, e.g.*, *Young*, 2010 WL 4269304, at *3; *Caraccioli*, 167 F. Supp. 3d at 1064 (holding that plaintiff could not base claims for negligent infliction of emotional distress on Facebook's Terms of Service). A contractual duty cannot serve as the basis for a tort claim absent an independent duty (which, as discussed above, is nonexistent here). *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (holding that "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law"). Moreover, as discussed above, the contract that Plaintiff agreed to in fact gives Facebook the right to remove content but does not require it to maintain content.

**Second**, Ms. King has not alleged the sort of injury that is necessary for this claim. "California generally authorizes emotional distress damages only in cases of physical injury[,]" or

"in certain specialized cases such as mishandling of remains, false diagnosis of potentially fatal disease, witnessing the injury of close relative, or negligence involving quasi-fiduciary duties in the cases of bad faith denial of insurance coverage." *Davis v. Maryland Bank*, 2002 WL 32713429, at *3 (N.D. Cal. June 19, 2002). Plaintiffs have not alleged anything of the sort.

### 4. Ms. King has no cognizable claim under the CDA.

Finally, Plaintiffs fail to allege a claim under Section 230(c)(2) of the CDA because no such claim exists. Section 230(c)(2), like Section 230(c)(1), is an *immunity provision*, not a cause of action. *See, e.g.*, *Belknap v. Alphabet, Inc.*, 504 F. Supp. 3d 1156, 1160 (D. Or. Dec. 1, 2020). This is clear from the text of the statute. Section 230(c)(2) of the CDA states, in relevant part: "(2) No provider or user of an interactive computer service shall be held liable on account of-- (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected[.]" 47 U.S.C. § 230(c)(2)(A). Nothing in this text creates a cause of action. The "good faith" requirement of Section 230(c)(2)(A) affects only the extent of the immunity granted by Section 230, and Facebook has not raised a Section 230(c)(2) in this motion.

### 5. Mr. King's claims also fail.

Mr. King's claims of intentional and/or negligent infliction of emotional distress fail for the same reasons that those claims fail for Ms. King, as detailed above.

Mr. King's claim of loss of consortium should also be dismissed because California recognizes the tort of loss of consortium only for the spousal relationship, not for the relationship between a parent and child. *Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274 (2012) (noting that "our state's high court has declined to expand liability for loss of consortium to nonspouse plaintiffs, such as children or parents of injured parties," and collective authority).

In any event, Mr. King's loss of consortium claim is derivative of Ms. King's defective claims. Under California law, "a claim for loss of consortium is a derivative claim which cannot stand alone." *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 714 F. Supp. 1028, 1035 (N.D. Cal. 1989), *reversed in part on other grounds*, 960 F.2d 1401 (9th Cir. 1991); *see also Brittell v. Young*, 90

Cal. App. 3d 400, 407 n.5 (1979) (unless a valid underlying claim is stated, a plaintiff cannot state a cause of action for loss of consortium); *Hickman v. Sofamor-Danek Grp., Inc.*, 1999 WL 606690, at *2 (N.D. Cal. Feb. 17, 1999) (dismissing plaintiff's spouse's claim for loss of consortium because it was derivative of plaintiff's other claims); *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1237 (N.D. Cal. 2014) ("A loss of consortium claim is derivative of and dependent on the spouse's negligence action."). Because Ms. King has failed to state claims, Mr. King's derivative loss of consortium claim also fails as a matter of law.

### B. Plaintiffs' Claims are Barred by Section 230(c)(1) of the CDA.

Even if Plaintiffs had pleaded facts sufficient to state a claim against Facebook (they have not), Plaintiffs' claims fail for a second, independent reason: the claims alleged are barred as a matter of law by Section 230(c)(1) of the CDA. 47 U.S.C. § 230(c)(1). Plaintiffs seek to hold Facebook liable for removing Ms. King's content from its platforms. Section 230(c)(1) prohibits such claims. *See, e.g.*, *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009); *Ebeid*, 2019 WL 2059662, at *5; *King v. Facebook, Inc.*, 2019 WL 4221768, at *3-4 (N.D. Cal. Sept. 5, 2019).

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider[,]" 47 U.S.C. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3).

Section 230(c)(1) "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal quotations and citations omitted*), opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007); *accord Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 969 (N.D. Cal. 2016). Immunity extends to activities of a service provider that involve its moderation of third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific

editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

CDA Section 230(c)(1) immunity, "like other forms of immunity, is generally accorded effect at the first logical point in the litigation process[,]" because "immunity is an ***immunity from suit*** rather than a mere defense to liability[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quoting *Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original); *accord Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *8–9 (N.D. Cal. Oct. 26, 2011).

Accordingly, courts have regularly applied Section 230(c)(1) at the pleading stage to dismiss a wide variety of claims, including the causes of action asserted here. *See, e.g.*, *Caraccioli*, 167 F. Supp. 3d at 1064–66 (breach of contract; NIED; IIED); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017) (breach of contract); *King*, 2019 WL 4221768, at *3 (same); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *3-4 (N.D. Cal. June 10, 2019) (NIED); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 322 (D.N.J. 2015) (NIED); *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *2 (N.D. Cal. July 8, 2016) (IIED).

Facebook is entitled to immunity under Section 230(c)(1) if three requirements are met: (1) it is a "provider . . . of an interactive computer service[;]" (2) the allegedly offending content was "provided by another information content provider[;]" and (3) Plaintiffs' claims treat Facebook as the "publisher" of that content. 47 U.S.C. § 230(c)(1); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *affirmed sub nom, Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F.App'x 526 (9th Cir. 2017); *Ebeid*, 2019 WL 2059662, at *3. The Complaint reveals that all three requirements for Section 230(c)(1) immunity are met.

### 1. Facebook is a provider of an interactive computer service.

The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). Every court to consider whether Facebook meets this definition has concluded that it does. *See e.g.*, *Ebeid*, 2019 WL 2059662, at *3; *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *5 (N.D. Cal. Oct. 9, 2018); *Sikhs for Justice*, 144 F. Supp. 3d at 1093;

*Caraccioli*, 167 F. Supp. 3d at 1065. Here, plaintiffs themselves allege that Facebook is a provider of an "interactive computer service" under 47 USC 230(f)(2). Compl., ¶ 37. The first requirement for Section 230(c)(1) immunity is thus met.

### 2. The content at issue was provided by someone other than Facebook.

For the second requirement, the content at issue must come from an "information content provider" other than Facebook. The CDA broadly defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. 47 U.S.C. § 230(f)(3). Facebook's users, including Plaintiff, fit this definition, as numerous courts have held. *See, e.g.*, *Ebeid*, 2019 WL 2059662, at *4 ("Plaintiff argues that the information at issue was not provided by another information content provider because plaintiff himself—not some other third-party—provided the information. That argument has been repeatedly rejected."); *Lancaster*, 2016 WL 3648608, at *3 (holding that plaintiff's own content satisfied second prong of the CDA immunity test).

Here, Plaintiffs acknowledge that Ms. King, not Facebook, created and operated the account. Compl., ¶ 1 ("King had a Personal Account . . . with Facebook [that] she established approximately ten years ago"). Courts have held that such accounts constitute information provided by another information content provider under Section 230. *Brittain*, 2019 WL 2423375, at *4 (finding that a Twitter account qualified as "information provided by another information content provider" under Section 230). Moreover, Plaintiffs' claims arise entirely out of content that Ms. King allegedly created. *See, e.g.*, Compl. ¶¶ 14, 17, 21, 24-26. Plaintiffs do not allege that Facebook had any role in creating any of the content at issue.

Consequently, the second requirement for Section 230(c)(1) immunity is met.

### 3. Plaintiffs' claims seek to treat Facebook as a publisher of the content at issue.

The third requirement for Section 230(c)(1) immunity is satisfied if a plaintiff's claim seeks to treat the defendant as a publisher of the material at issue, *i.e.*, to "hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). "[W]hat matters is not the name of the cause of action" but rather "whether the cause of action

inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. In other words, claims based on any alleged conduct "that can be boiled down to deciding whether to exclude material that third parties seek to post online" satisfy the third requirement for immunity. *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc).

Here, each of Plaintiffs' claims is predicated on allegations that Facebook improperly disabled Ms. King's Facebook account, thereby removing content and preventing her from posting content. Compl., ¶¶ 20-26, 30, 33-35, 40-41, 45-46.

Courts have consistently held that claims based on such allegations satisfy the publisher-treatment requirement and are therefore within the scope of Section 230(c)(1). *See, e.g., Brittain*, 2019 WL 2423375, at *3  (Section 230(c)(1) immunized Twitter's decision to suspend Plaintiff's accounts); *Ebeid*, 2019 WL 2059662, at *5 ("[Facebook's] decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct. The same is true for Facebook's on-and-off again restriction of plaintiff's use of and ability to post on the Facebook platform.") (internal quotations and citations omitted); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunized "decisions to delete [plaintiff's] user profiles"); *King*, 2019 WL 4221768, at *3 (concluding that account suspension is publisher activity immunized by Section 230); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020) (holding that Section 230 immunized Facebook from, among other things, claims for alleged breach of contract because "Plaintiffs' claims [were] based on Facebook's decision not to publish [Plaintiffs'] content" by terminating Plaintiff's account).

In sum, all three requirements for Section 230(c)(1) immunity are met, and Plaintiffs' claims are barred in their entirety.

//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: August 30, 2021

KEKER, VAN NEST & PETERS LLP

By: /s/ Matan Shacham
MATAN SHACHAM

Attorneys for Defendant FACEBOOK, INC