RUSSEL DAVID MYRICK 270803
The RDM Legal Group
7979 Ivanhoe Ave, Ste 200
La Jolla, CA 92037-4505
Tel. No. 888-482-8266
Fax No. 858-244-7930
Email: russel@rdmlg.com

SAMUEL P. KING, JR. 1396
735 Bishop Street, Suite 304
Honolulu, Hawaii 96813
Tel. No. 808-384-6325
Fax No. 808-533-4745
Email: sam@kingandking.com
Pro Hac Vice

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE SEPANIAK KING and CHRISTOPHER EDWARD SEPANIAK KING, | ) Civ. No. 3:21-cv-04573-EMC ) ) PLAINTIFFS' MEMORANDUM IN ) OPPOSITION TO DEFENDANT'S |
| Plaintiffs, | ) ADMINISTRATIVE MOTION TO CONTINUE ) CASE MANAGEMENT CONFERENCE |
| vs. | ) ) Judge: Edward M. Chen |
| FACEBOOK, INC., a Delaware corporation, | ) ) Date Filed: June 14, 2021 ) |
| Defendant. | ) Trial Date: None Set ) |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
ADMINISTRATIVE MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE

Plaintiffs respond to Defendant's Administrative Motion to Continue Case Management Conference as follows:

I. Introduction

As Defendant FACEBOOK ("FACEBOOK") states, Plaintiffs filed their Complaint on June 14, 2021. FACEBOOK filed its FRCP Rule 12(b)(6) motion to dismiss the Complaint on August 30, 2021. Plaintiff's filed their First Amended Complaint ("FAC") on September 10, 2021, as permitted under

FRCP Rule 15(a)(1)(B). Out of an abundance of caution, Plaintiff mailed a hard copy of the FAC to FACEBOOK's attorneys asking that they accept service without the need to serve a summons. FACEBOOK's attorneys have advised Plaintiffs' attorneys that the electronic service of the FAC will be considered by them as sufficient service of the FAC and that FACEBOOK's attorneys will count time accordingly pursuant to any deadlines in the FRCP. For example, FACEBOOK's attorneys have advised Plaintiffs' attorneys that FACEBOOK will file a new 12(b)(6) motion by this coming Friday, September 24 (presumably because that date is 14 days after service of the FAC and FRCP Rule 15(a)(3) requires a response to an amended complaint within 14 days, except that a Rule 12(b)(6) motion tolls the answer time per Rule 12(a)(4)).

Defendant has now made an LR 16-2(d) "administrative" motion to continue the Case Management Conference presently set before this Court for October 12, 2021, at 1:30 p.m. Because Defendant has refused to provide any information about why the Facebook Account of Plaintiff ADRIENNE SEPANIAK KING ("KING") was disabled and why all of the content on the King Facebook Account was destroyed by FACEBOOK and because discovery is needed for KING to be able to respond to any Rule 12 motion by FACEBOOK, KING, as further set out below, objects to a continuation of the Case Management Conference. This Court should address now in a Case Management Conference FACEBOOK's refusal to provide discovery because the issue is going to come up once FACEBOOK refiles its 12(b)(6) motion.

II. Two major issues which require discovery from FACEBOOK so that Plaintiffs can provide a proper response to FACEBOOK's 12(b)(6) motion.

The Complaint and now FAC raise two major issues which require discovery from FACEBOOK in order for Plaintiffs to provide a proper response to FACEBOOK's soon-to-be-filed 12(b)(6) motion. The first issue is KING's claim of breach of contract by FACEBOOK in disabling the King Facebook Account and destroying all of the content on the King Facebook Account. The second issue is FACEBOOK's claim of immunity pursuant to 47 USC 230(c)(1), a provision of the Communications Decency Act ("CDA").

A. Breach of Contract. FACEBOOK claimed in its first 12(b)(6) motion that KING did not identify what provisions of her contract with FACEBOOK (FACEBOOK's Terms of Service) were

allegedly breached by FACEBOOK.  FACEBOOK has requested "judicial notice" that the Terms of Service filed in this case on August 30, 2021, constitute the contract between FACEBOOK and KING.  KING agrees that these Terms of Service do constitute the contract between her and FACEBOOK and agrees that this Court can take "judicial notice" of this fact.  In the FAC, KING identifies two relevant provisions of the Terms of Service – paragraphs 3.1 and 4.2.  Paragraph 3.1 sets out the qualifications for a person to have a Facebook Account.  KING alleges that all times she met all qualifications of paragraph 3.1 and was not in breach of the contract with FACEBOOK.

FACEBOOK next claimed in its first 12(b)(6) motion that, pursuant to the second paragraph of paragraph 4.2 of the Terms of Service, FACEBOOK had absolute authority and discretion to disable the King Facebook Account based on the following language: "If we determine that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, we may suspend or permanently disable access to your account."  No party to a contract has absolute authority and discretion to determine if another party to a contract has breached the contract.  When FACEBOOK disabled the King Facebook Account, the only reason FACEBOOK supplied to KING was that the King Facebook Account failed to "follow" FACEBOOK's Community Standards.  In her FAC, KING has stated that there was nothing in the King Facebook Account which failed to "follow" FACEBOOK's Community Standards (a fact which must be assumed to be true for purposes of FACEBOOK's 12(b)(6) motion).  KING also states in the FAC that in spite of numerous attempts by her and her computer-savvy son, Plaintiff CHRISTOPHER EDWARD SEPANIAK KING ("CKING"), to get any further information from FACEBOOK as to why the King Facebook Account was disabled, FACEBOOK did not reply.  In other words, FACEBOOK refused when KING and CKING attempted to get more information from FACEBOOK, and FACEBOOK continues to refuse, to state what content on the King Facebook Account failed to "follow" FACEBOOK's Community Standards, what Community Standard or Standards the King Facebook Account did not "follow," and how the alleged Community Standard or Standards were not "followed."  In order to respond to FACEBOOK's claim that KING violated paragraph 4.2 of the Terms of Service, KING has a discovery right to know what content did not "follow" FACEBOOK's Community Standards, what Community Standard or Standards were not "followed," and how the alleged Community Standard or Standards were not followed.

FACEBOOK next claimed in its first 12(b)(6) motion that other courts "have repeatedly rejected similar contract claims based on Facebook's Terms of Service." FACEBOOK cited to four cases: *Caraccoli v. Facebook,* Inc., 167 F. Supp. 3d 1056 (2016); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662 (N.D. Cal May 9, 2019), *Young v. Facebook, Inc.*, 2010 WL 4269304 (N.D.Cal. Oct 25, 2010), and *King v. Facebook, Inc.*, 2019 WL 6493968 (N.D.Cal. Dec. 3, 2019) (Motion, pp. 4-5). None of these cases support FACEBOOK's claim.

The *Ebeid* case is cited most often by FACEBOOK, but that case did not involve FACEBOOK's Terms of Service and did not involve a contract provision like 4.2. *Ebeid* involved a provision relating to allowing users to place ads, but the provision specifically reserved FACEBOOK's right to reject and remove any ad for any reason, and FACEBOOK specifically did not guarantee that ads would be received (a point which was conceded by the Plaintiff in *Ebeid*). No such provision applies in the KING case.

In the *Young* case, the Plaintiff complained about two alleged breaches of contract by FACEBOOK. First, she claimed that FACEBOOK failed to follow its "Facebook Principles," but the "Facebook Principles" were not contract provisions which were part of Facebook's "Statement of Rights and Responsibilities" (the precursor to FACEBOOK's Terms of Service (see paragraph 5.1 of the Terms of Service stating that the "Terms of Service" were formerly "known as the Statement of Rights and Responsibilities")) (*see fn. 6* in *Young*). Second, Young claimed that FACEBOOK failed to protect her from "bullying" tactics employed by her ex-boyfriend, but the Court in *Young* pointed out that the provisions in FACEBOOK's Statement of Rights and Responsibilities saying users should not "bully" other users was a restriction on users and did not constitute an "affirmative obligation" of FACEBOOK. In fact, the Statement of Rights and Responsibilities contained a disclaimer in capital letters stating that FACEBOOK did not guarantee that bullying would not occur. Note that at least in the *Young* case, FACEBOOK told Ms. Young specifically what conduct she engaged in which resulted in the disabling of her account. KING has yet to receive such satisfaction from FACEBOOK.

In the *Carraccoli* case, the Plaintiff was not even a user of FACEBOOK and was complaining about abusive behavior by a FACEBOOK account-holder against him. The Court cited to *Young* stating that FACEBOOK's Terms of Service did not constitute an "affirmative obligation" on FACEBOOK to

4

protect the Plaintiff from such abuse.  In the KING case, KING is a user of FACEBOOK, and she is specifically alleging that FACEBOOK violated paragraph 4.2 of its Terms of Service (the contract between KING and FACEBOOK).  The allegation of the FAC is that FACEBOOK violated paragraph 4.2 by improperly applying it to the King Facebook Account and disabling the King Facebook Account and destroying all of KING's content.

In the *King* case, FACEBOOK's "Terms of Use" which applied in the *King* case stated, "Facebook may for 'any reason' and in its 'sole discretion' remove content and suspend or block user accounts."  In fn 5, the Court in *King* further referred to two provision in the Terms of Use which stated, "You understand and agree that the Company may, but is not obligated to, review the Site and may delete or remove (without notice) any Site Content or User Content in its sole discretion, for any reason or no reason, including User Content that in the sole judgment of the Company violated this Agreement or the Facebook Code of Conduct, or which might be offensive, illegal, or that might violate the rights, harm, or threaten the safety of users or others," and "Facebook may, in its sole discretion, remove or disable access to any User Content."  Clearly, no such provisions in FACEBOOK's Terms of Service apply in the KING case.

To summarize, paragraph 4.2 states that in order to disable a user's Facebook account, FACEBOOK must make a determination that the user has "clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards."  This is a provision of the contract between KING and FACEBOOK which creates "affirmative obligations" of FACEBOOK to disable an account only for certain reasons, and there is no provision in the Terms of Service which state that FACEBOOK has unfettered discretion to do whatever it wants any time it wants – otherwise, why have Community Standards at all?  KING has a right to discovery from FACEBOOK on the how, what, and why paragraph 4.2 allegedly applied to the King Facebook Account.  Without this information, how can KING properly respond to FACEBOOK's 12(b)(6) motion?  Also, where in the Terms of Service does it state that FACEBOOK can destroy *all the content* of a user's Facebook account, even if there is a violation of paragraph 4.2?  KING has a right to discovery from FACEBOOK regarding her question about what happened to all of her content (owned by her and created over about 10 years of use) which did *not* fail to "follow" FACEBOOK's Community Standards.

B. Inapplicability of the Communications Decency Act ("CDA"), 47 USC 230(c)(1)  Without getting into KING's argument about whether the CDA has been properly interpreted by the appellate courts, *see* Statement by Justice Thomas supporting denial of cert in *Malwarebytes, Inc. v. Software Group USA, LLC*, 592 U.S. ___ (2020), the CDA does not apply to KING's case for another reason.

FACEBOOK claimed in its first 12(b)(6) motion that section 230(c)(1) of the CDA "immunized" FACEBOOK from all of KING's claims.  This simply is not true.  In *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), the Ninth Circuit held that even if Sec. 230(c)(1) generally provides broad immunity for an interactive computer service like FACEBOOK, this "immunity" could be trumped by a contractual agreement of the interactive computer service with its user.  In this case, FACEBOOK's Terms of Service, its contractual agreement with KING, override any claimed "immunity" by FACEBOOK.  FACEBOOK has to follow its contractual promise to KING set out in paragraph 4.2.  Again, KING is entitled to discovery from FACEBOOK about how KING supposedly breached her agreement with FACEBOOK  to "follow" FACEBOOK's Community Standards.  Note that *Barnes* analyzed the inapplicability of Sec. 230(c)(1) both in terms of making a promise and in terms of "waiver," 570 F.3d at 1108-1109.  *Barnes* involved a "promissory estoppel" claim (rather than a direct contract claim) by the Plaintiff who was not a Yahoo user, but the Ninth Circuit stated in *Barnes*, "In a promissory estoppel case, *as in any other contract case*, the duty the defendant allegedly violated springs from a contract – an enforceable promise – not from any non-contractual conduct or capacity of the defendant [emphasis added]."  570 F.3d at 1107.  The *Barnes* Court concluded regarding the breach of contract issue as it relates to Sec. 230(c)(1), "Therefore, we conclude that, insofar as Barnes alleges a breach of contract claim under the theory of promissory estoppel, subsection 230(c)(1) of the Act does not preclude her cause of action."

Note that Sec. 230(c)(1) is inapplicable both to KING's Breach of Contract claim (First Cause of Action of the FAC) and to her Breach of Implied Covenant of Good Faith and Fair Dealing claim (Seventh Cause of Action of the FAC) – both causes of action are based on breach of contract.

C. Applicability of the CDA.  Even if the CDA did apply to KING's breach of contract causes of action, KING is still entitled to discovery from FACEBOOK.  FACEBOOK claims "immunity" under Sec. 230(c)(1) because it  engaged in  the  activity of a "publisher" in deciding to take down the King

Facebook Account.  How do we know that FACEBOOK engaged in the activity of a "publisher" where FACEBOOK refuses to say why it did what it did except for a vague reference to the failure of the King Facebook Account to "follow" FACEBOOK's Community Standards?  How do we know that FACEBOOK did not simply make a mistake in taking down the King Facebook Account and is now trying to cover up for its mistake?  How do we know that FACEBOOK did not take down the King Facebook Account because KING is a woman, or because she is 100% Polish.  Are these "publisher" decisions for which FACEBOOK is entitled to "immunity" under the CDA?  At least, FACEBOOK should be required to state the reasons – the how, what, and why of the takedown of the King Facebook Account – before it can claim "publisher" immunity.

III. Bad Faith

There is yet another reason KING is entitled to discovery from FACEBOOK.  KING has alleged "bad faith" on the part of FACEBOOK.  At least two courts have referred to a refusal by an interactive computer service to give reasons for its takedown of an account as "bad faith."  In the *Young* case referenced above, the Court stated, "It is at least conceivable that arbitrary or bad faith termination of user accounts, or even termination of user accounts *with no explanation at all*, could implicate the implied covenant of good faith and fair dealing" [emphasis added]."  In *Smith v. Trusted Universal Standards in Electronic Transactions, Inc.*, (D.N.J. 2011), denying Defendant Comast's 12(b)(6) motion under the CDA, the Court held:

> The Court finds that a reasonable jury could conclude that Comcast acted in bad faith when it failed to respond to Plaintiff's repeated requests for an explanation why it continually blocked Plaintiff's outgoing email.  Notwithstanding the fact that Plaintiff no longer alleges that Comcast told him that he would not have to worry about email blockages if he subscribed to a higher level of service, the Court finds no explanation for Comcast's failure to respond after Plaintiff contacted Comcast to ascertain the reason for the second blockage.  Put simply, the Court is not convinced that an internet service provider acts in good faith when it simply ignores a subscriber's request for information concerning an allegedly improper email blockage.
>
> Moreover, even if, as Comcast argues, the Subscriber Agreement precludes Comcast from liability for monitoring Plaintiff's emails, there is no reason why Comcast could not articulate its immunity (or provide another rationale for the blockage) when asked to do so by a paying customer. Therefore, because a reasonable jury could conclude that Comcast acted in bad faith when it failed to respond to Plaintiff's requests, Comcast is not entitled to immunity under the CDA. (See casetext.com, Slip Op., pp. 15-16).  (*See also Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1118 (2011)).

FACEBOOK seeks to have the entire FAC dismissed by this Court, including KING's allegations of "bad faith." Based on *Young* and *Smith*, KING is entitled to discovery from FACEBOOK to show whether FACEBOOK was justified in refusing to at least provide a decent explanation to KING about why the King Facebook Account was disabled and all of KING's content was destroyed.

IV. Inappropriateness of a 12(b)(6) motion.

FACEBOOK intends to file a second 12(b)(6) motion claiming in part a breach of contract by KING (failing to "follow" FACEBOOK's Community Standards) and claiming "immunity" under Sec. 230(c)(1) of the CDA. These are both affirmative defenses which must be pled by FACEBOOK in its Answer to the FAC (FRCP Rule 8(c)) and about which initial disclosures should be made pursuant to HRCP Rule 26(a). FACEBOOK is trying to get away with not filing an Answer and not even stating why it disabled the King Facebook Account and why it destroyed all of KING's content. Affirmative defenses are not properly raised in 12(b)(6) motions. *Doe v. GTE Corp.*, 347 F.3d 655, 657 ( 7th Cir. 2003). FACEBOOK should be required to file an Answer to the FAC in this case and be subject to discovery regarding affirmative defenses that it pleads. Even if FACEBOOK filed an Answer and then a Rule 12(c) motion on the pleadings, KING would still be entitled to discovery.

V. Conclusion

The most efficient way for this Court to move this case along is to hold the Case Management Conference as scheduled on October 12, 2021, to address the issue about whether FACEBOOK can get away with making motions (12(b)(6) or 12(c)) without providing basic discovery. KING is clearly entitled to simple discovery from FACEBOOK – what content of the King Facebook Account is claimed by FACEBOOK to have not "followed" Community Standards, what Community Standard or Standards were allegedly not "followed," and how were the claimed Community Standards not followed. This simple discovery is basic to issues of breach of contract, breach of the implied duty of good faith and fair dealing, whether Sec. 230(c)(1) immunity applies, what justified the destruction of all of the contents of the King Facebook Account, and whether acted FACEBOOK acted in "bad faith." Why is FACEBOOK hiding the ball? What is FACEBOOK afraid of? KING is entitled to basic Due Process

Plaintiffs' MIO to Defendant's Motion to Continue CMC - Civ. No. 3:21-cv-04573-EMC

and right to defend properly against any motions to be filed by FACEBOOK.

KING is asking this Court to continue the date on which FACEBOOK needs to file its Answer and any motion under the rules of civil procedure (a continuance to which KING would not object) until after a Case Management Conference is held at which time this Court can give guidance to parties on proper discovery in this case. Without that guidance now, KING will be filing a motion to compel discovery and to continue a hearing on any motion filed by FACEBOOK until proper discovery is provided, so the issue of discovery is already a matter of contention between the parties which KING suggests that this Court address at this time.

DATED: San Francisco, California, September 20, 2021.


_____
/s/ Samuel P. King, Jr.
SAMUEL P. KING, JR.
Attorney for Plaintiffs appearing Pro Hac Vice