KEKER, VAN NEST & PETERS LLP
MATAN SHACHAM - # 262348
mshacham@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant
FACEBOOK, INC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADRIENNE SEPANIAK KING and CHRISTOPHER EDWARD SEPANIAK KING, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 3:21-cv-04573-EMC <br><br> **DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:        November 4, 2021 <br> Time:        1:30 p.m. <br> Courtroom: 5 <br><br> Judge:      Hon. Edward M. Chen <br><br> Date Filed: June 14, 2021 <br><br> Trial Date:  None set |

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................2

II.    BACKGROUND ..................................................................................................3

III.   ARGUMENT ......................................................................................................4

    A.   The FAC fails to state any cause of action against Facebook................................4

        1.   Ms. King fails to state a claim for breach of contract (Claim 1). ...............4

        2.   Ms. King fails to state a claim for breach of the implied covenant of good faith and fair dealing (Claim 7)............................................................7

        3.   Ms. King fails to state a claim for intentional infliction of emotional distress (Claim 3). ....................................................................................9

        4.   Ms. King fails to state a claim for negligent infliction of emotional distress (Claim 4). ..................................................................................11

        5.   Ms. King fails to state a claim for conversion (Claim 8)..........................12

        6.   Ms. King has no cognizable claim under the CDA (Claim 2). ..................14

        7.   Ms. King fails to state a claim for declaratory and injunctive relief (Claim 6). ...............................................................................................15

        8.   Mr. King's claims also fail (Claim 5). .....................................................15

    B.   Plaintiffs' claims are barred by Section 230(c)(1) of the CDA. ...........................16

        1.   Facebook is a provider of an interactive computer service......................18

        2.   The content at issue was provided by someone other than Facebook. ......18

        3.   Plaintiffs' claims seek to treat Facebook as a publisher of the content at issue...................................................................................19

    C.   The asserted claims should be dismissed with prejudice because further amendment would be futile...................................................................................20

IV.    CONCLUSION..................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Appling v. State Farm Mut. Auto. Ins. Co.*,
   340 F.3d 769 (9th Cir. 2003) ...........................................................................................7

*Atkinson v. Facebook Inc.*,
   No. 20-cv-05546-RS, ECF No. 75 (N.D. Cal. Dec. 7, 2020) ...................................14

*Bank of New York v. Fremont General Corp.*,
   523 F.3d 902 (9th Cir. 2008) .........................................................................................12

*Barnes v. Yahoo! Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .............................................................................16, 17, 19

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ......................................................................9

*Belknap v. Alphabet, Inc.*,
   504 F. Supp. 3d 1156 (D. Or. Dec. 1, 2020) ..............................................................14

*Brittain v. Twitter, Inc.*,
   2019 WL 2423375 (N.D. Cal. June 10, 2019) .........................................................17, 18, 19

*Capolupo v. Dep't of Cal. Highway Patrol*,
   2021 WL 4163573 (N.D. Cal. Aug. 20, 2021) ..........................................................20

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................................................. *passim*

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ......................................................................................17

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*,
   770 F. Supp. 2d 1074 (S.D. Cal. 2010) .....................................................................13

*Davenport v. Litton Loan Servicing, LP*,
   725 F. Supp. 2d 862 (N.D. Cal. 2010) ........................................................................9

*Davis v. Maryland Bank*,
   2002 WL 32713429 (N.D. Cal. June 19, 2002) ..........................................................12

*Ebeid v. Facebook, Inc.*,
   2019 WL 2059662 (N.D. Cal. May 9, 2019) ..................................................... *passim*

*Eidson v. Medtronic, Inc.*,
   40 F. Supp. 3d 1202 (N.D. Cal. 2014) ........................................................................16

*In re Facebook PPC Advert. Litig.*,
709 F. Supp. 2d 762 (N.D. Cal. 2010) .................................................................. 7, 8, 9

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ......................................................................................... 19

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ......................................................................... 19

*Ferretti v. Pfizer Inc.*,
855 F. Supp. 2d 1017 (N.D. Cal. 2012) ......................................................................... 11

*Fiedler v. Clark*,
714 F.2d 77 (9th Cir. 1983) ........................................................................................... 15

*Fields v. Twitter, Inc.*,
200 F. Supp. 3d 964 (N.D. Cal. 2016) ........................................................................... 17

*Fish v. Aviation*,
2019 WL 690286 (N.D. Cal. Feb. 19, 2019) ................................................................ 15

*Foley v. Bates*,
2007 WL 1430096 (N.D. Cal. May 14, 2007) ......................................................... 11, 15

*Fyk v. Facebook, Inc.*,
808 F. App'x 597 (9th Cir. 2020) .................................................................................. 14

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021) ........................................................................................... 14

*Grayson v. 7-Eleven, Inc.*,
2013 WL 1187010 (S.D. Cal. Mar. 21, 2013) .............................................................. 14

*Hickman v. Sofamor-Danek Grp., Inc.*,
1999 WL 606690 (N.D. Cal. Feb. 17, 1999) ................................................................ 16

*Igbonwa v. Facebook, Inc.*,
2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ................................................................ 18

*King v. Facebook, Inc.*,
2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ................................................... 16, 17, 19

*King v. Facebook, Inc.*,
2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) .................................................................. 6

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) ...................................................................................... 13

*Lancaster v. Alphabet Inc.*,
2016 WL 3648608 (N.D. Cal. July 8, 2016) ..................................................... 9, 15, 17, 18

*Levitt v. Yelp! Inc.*,
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011)..................................................................17

*Milne Emps. Ass'n v. Sun Carriers, Inc.*,
   714 F. Supp. 1028 (N.D. Cal. 1989) .........................................................................16

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ....................................................................................17

*Perez v. LinkedIn Corp.*,
   2021 WL 519379 (N.D. Cal. Feb. 5, 2021) ..............................................................10

*Perfect 10, Inc. v. CCBill LLC*,
   481 F.3d 751 (9th Cir. 2007) ....................................................................................17

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) ....................................................................................20

*Riggs v. MySpace, Inc.*,
   444 F. App'x 986 (9th Cir. 2011) .............................................................................19

*Rosenfeld v. JP Morgan Chase Bank, N.A.*,
   732 F. Supp. 2d 952 (N.D. Cal. 2010) .......................................................................7

*Saponaro v. Grindr, LLC*,
   93 F. Supp. 3d 319 (D.N.J. 2015) ..............................................................11, 15, 17

*Schneider v. TRW, Inc.*,
   938 F.2d 986 (9th Cir. 1991) ....................................................................................10

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...............................................................17, 18

*Tuttle v. Chase Ins. Life & Annuity Co.*,
   2007 WL 2790359 (N.D. Cal. Sept. 20, 2007) .........................................................11

*Young v. Facebook, Inc.*,
   2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)........................................................6, 11

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..................................................................7, 8

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ....................................................................................19

*Zimmerman v. Facebook, Inc.*,
   2020 WL 5877863 (N.D. Cal. Oct. 2, 2020)............................................................16

iv

**State Cases**

*Brittell v. Young*,
    90 Cal. App. 3d 400 (1979) ............................................................................16

*Christensen v. Super. Ct.*,
    54 Cal. 3d 868 (1991) ...........................................................................10, 15

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017) ...........................................................................17

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) ....................................................................................12

*Golden W. Baseball Co. v. City of Anaheim*,
    25 Cal. App. 4th 11 (1994) ...............................................................................6

*Guz v. Bechtel Nat. Inc.*,
    24 Cal. 4th 317 (2000) ................................................................................8, 9

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) ............................................................................10, 11

*Leonard v. John Crane, Inc.*,
    206 Cal. App. 4th 1274 (2012) .......................................................................16

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) .............................................................................19

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ............................................................................10, 11

*Spates v. Dameron Hosp. Assn.*,
    114 Cal. App. 4th 208 (2003) .............................................................12, 13, 14

*Tamarind Lithography Workshop, Inc. v. Sanders*,
    143 Cal. App. 3d 571 (1983) .............................................................................7

*Tavernier v. Maes*,
    242 Cal. App. 2d 532 (1966) ..........................................................................13

**Federal Statutes**

47 U.S.C. § 230.................................................................................2, 15, 18, 19

47 U.S.C. § 230(c)(1) ............................................................................ *passim*

47 U.S.C. § 230(c)(2) ..................................................................................3, 15

47 U.S.C. § 230(f) ..........................................................................................18

1749245

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on November 4, 2021, at 1:30 p.m., or as soon thereafter as this matter may be heard before the Honorable Judge Edward M. Chen, United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Facebook, Inc. will and hereby does move this Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims filed against it by Plaintiffs Adrienne Sepaniak King and Christopher Edward Sepaniak King on the grounds that Plaintiffs fail to state a claim upon which relief can be granted and Plaintiffs' claims are barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the request for judicial notice and supporting declaration of Jenny Pricer filed concurrently herewith, the declaration of Jason George filed concurrently herewith, the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated: September 24, 2021

KEKER, VAN NEST & PETERS LLP

By: _/s/Jason George_
MATAN SHACHAM
JASON GEORGE

Attorneys for Defendant
FACEBOOK, INC

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiffs have failed to allege facts sufficient to support any claim.

2.      Whether Plaintiffs' claims are barred by Section 230(c)(1) of the Communications Decency Act.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Adrienne Sepaniak King (hereinafter "Ms. King") and Christopher Edward Sepaniak King (hereinafter "Mr. King") allege in their First Amended Complaint ("FAC") essentially identical facts as they alleged in their original Complaint, namely, that Facebook, Inc. ("Facebook") wrongfully disabled Ms. King's account on the Facebook service (the "Facebook account"). Plaintiffs' claims in the FAC are also essentially similar, solely adding two new claims for breach of the implied covenant of good faith and fair dealing and conversion based on the same operative facts. Plaintiffs seek tens of thousands of dollars in damages and a court order forcing Facebook to reinstate Ms. King's Facebook account and permanently enjoining Facebook from ever disabling her account in the future without first providing its reasons for doing so. The court should dismiss this action with prejudice for two reasons:

*First*, Plaintiffs' FAC has failed to allege facts sufficient to support any cause of action. Plaintiffs do not identify any contractual duty arising from Facebook's Terms of Service or any cognizable duty in tort that Facebook breached. In fact, Facebook's Terms of Service expressly provide Facebook sole discretion to suspend or permanently disable accounts—the very conduct upon which all of Plaintiffs' claims are based. Moreover, Plaintiffs provide no rational basis—let alone a well-pleaded cause of action—for why Ms. King's son, Mr. King, is plaintiff in a suit alleging the disabling of *her* account.

*Second*, all of Plaintiffs' claims are barred by Section 230(c)(1) of the Communications Decency Act ("CDA"), which immunizes interactive service providers like Facebook from claims based on removal of user content from its platform. 47 U.S.C. § 230. The FAC on its face satisfies all the requirements for Section 230(c)(1) immunity.

Facebook raised these points in its motion to dismiss the original Complaint. Rather than

respond, Plaintiffs amended their Complaint with knowledge of the deficiencies Facebook identified—and failed to cure them. It is thus clear that further amendment would be futile, and that the Court should grant this motion to dismiss with prejudice.

## II.   BACKGROUND

Ms. King alleges that she established a personal Facebook account "approximately ten years ago" which she used to share political, personal, and other material with her network of friends on the platform. *See* ECF No. 20, First Amended Complaint ("FAC") ¶¶ 12-14. She alleges that she used the platform to share and discuss material "from a conservative point of view." *Id.* ¶ 14. On or about November 17, 2020, Ms. King discovered that she could no longer access her Facebook account. *Id.* ¶ 15. Plaintiffs allege that Facebook notified Ms. King that her account had been disabled because "it did not follow [Facebook's] Community Standards." *Id.* ¶¶ 16-17. Even with assistance from Mr. King, she was unable to reinstate the account. *Id.* ¶¶ 15-19.

On June 14, 2021, Plaintiffs filed their original Complaint against Facebook. ECF No. 1 ("Compl."). In that Complaint, Ms. King asserted five causes of action against Facebook, including (1) breach of contract; (2) "violation of 47 U.S.C. 230(c)(2)(A)"; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) declaratory and injunctive relief. Mr. King also alleged a single cause of action for intentional and/or negligent infliction of emotional distress and loss of consortium.

On August 30, 2021, Facebook filed a motion to dismiss the original Complaint. ECF No. 17. On September 10, 2021, Plaintiffs filed the FAC, and Facebook withdrew its motion to dismiss the original Complaint as moot. *See* ECF No. 22.

Plaintiffs' factual allegations, aside from a few small additions, are essentially identical to those in the original Complaint. *Compare* Compl. ¶¶ 15-17, 20, *with* FAC ¶¶ 15-17, 20. As in the original Complaint, the thrust of Plaintiffs' FAC—and the purported basis for each cause of action—is an allegation that Facebook unfairly disabled Ms. King's Facebook account and failed to adequately provide any basis for its decision to do so. *See* FAC at ¶¶ 15-17, 20. On this basis, Ms. King alleges the same five causes of action previously pleaded in the original Complaint plus

two new claims: (6) breach of the implied covenant of good faith and fair dealing; and (7) conversion. *Id.* ¶¶ 55-66. Mr. King continues to assert the same single cause of action for intentional and/or negligent infliction of emotional distress and loss of consortium. *Id.* ¶¶ 48-50.

Plaintiffs seek a declaratory order against Facebook "regarding its abuse of the CDA and the application of Facebook's Community Standards[,]" as well as injunctive relief reinstating Ms. King's Facebook account and enjoining Facebook from further action against Ms. King regarding her account. *Id.* ¶ 3. Each plaintiff also asks for damages in excess of $75,000. *Id.*

## III.   ARGUMENT

### A.   The FAC fails to state any cause of action against Facebook.

#### 1.   Ms. King fails to state a claim for breach of contract (Claim 1).

Plaintiffs allege that that "[t]he establishment of the King Facebook Account by [Ms. King] with Facebook constituted a contract between King and Facebook pursuant to the provisions of Facebook's Terms of Service." *Id.* ¶ 12. Plaintiffs contend that Facebook "breached paragraphs 3.1 and 4.2 of the Facebook Terms of Service contract with [Ms. King] by 1) disabling the King Facebook Account" even though Ms. King allegedly "did not cause the King Facebook Account not to 'follow' any of Facebook's Community Standards . . . , and 2) by destroying all of the content of the King Facebook Account." *Id.* ¶ 30. Even accepting Plaintiffs' factual allegation as true, the FAC fails to state any plausible claim for breach of contract for three reasons:

***First***, Plaintiffs have failed to identify any provision in Facebook's Terms of Service that requires Facebook to maintain content on its platform. Plaintiffs assert that Facebook breached sections 3.1 and 4.2 of Facebook's Terms of Service, but neither impose any such obligation on Facebook. Section 3.1, titled, "Who can use Facebook," merely defines requirements for using Facebook (such as "[u]s[ing] the same name that you use in everyday life") and indicates that while Facebook "tr[ies] to make Facebook broadly available to everyone," someone cannot use Facebook if "[w]e've previously disabled your account for violations of our Terms or Policies." Declaration of Jenny Pricer in Support of Facebook, Inc.'s Request for Judicial Notice ("Pricer Decl."), Ex. A Section 3.1. The statement in Facebook's Terms of Service that it "tr[ies]" to make

its services available imposes no obligation to allow any specific individual to use Facebook or to maintain their content. And the provision explicitly states that individuals whose accounts have been disabled, like Ms. King, cannot use Facebook.

Section 4.2 of Facebook's Terms of Service likewise does not impose the alleged obligation on Facebook. That provision states the following: "***If we determine*** that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, ***we may suspend or permanently disable access to your account***." *Id.*, Ex. A Section 4.2 (emphases added); *see also* Facebook, Inc.'s Request for Judicial Notice (setting forth basis for judicial notice of the Terms of Service). This provision thus provides Facebook discretion in determining whether a user has "clearly, seriously or repeatedly" breached its Terms of Service.

In addition, nothing in this language suggests any obligations regarding maintaining Ms. King's data before or after an account has been disabled. Plaintiffs claim that Facebook breached its contract with Ms. King by "destroying" her data. It is unclear what basis Ms. King has for making this allegation, separate from the fact that her account had been disabled—an act that, as discussed above, Facebook had the discretionary power to do. Moreover, Ms. King relies on the same provisions—sections 3.1 and 4.2 of Facebook's Terms of Service—as the basis for her breach claim alleging "destr[uction]" of data. But those provisions do not mention maintaining data at all, and thus do not create a duty that Facebook could have breached by allegedly "destroying" the content on Ms. King's account. Thus, while Plaintiffs may believe that Facebook misapplied its Terms of Service, Plaintiffs fail to identify any contractual obligation Facebook did not perform. *See Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing breach of contract claim, among other reasons, because "plaintiff does not allege that Facebook failed to perform its obligations under the contract").

***Second***, courts have repeatedly rejected similar contract claims based on Facebook's Terms of Service. "[C]ourt[s] ha[ve] correctly recognized [that], while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations'" by Facebook not to remove content from its platform. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d

1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017); *see also Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 n.6 (N.D. Cal. Oct. 25, 2010) ("While the Statement of Rights and Responsibilities indicates that it 'derives from the Facebook Principles,' the Facebook Principles do not create legal obligations or grant a user the right to enforce those principles in court."); *King v. Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021) ("[T]here is nothing in the Terms of Use or other contract identified by King that could plausibly support a breach claim."). Nothing in Facebook's Terms of Service creates any affirmative obligation to Ms. King to maintain her content or profile on the platform.

      *Third*, Ms. King agreed in Section 4.3 of the Terms of Service that "under no circumstance will [Facebook] be liable to [Ms. King] for any lost profits, revenues, information, or ***data***[.]" Pricer Decl., Ex. A Section 4.3 (emphasis added). In addition, the Terms of Service explicitly contemplates Facebook's ability to remove the user's content. *See id.*, Ex. A Section 3.2. These sections—which Plaintiffs fail to mention in the FAC—contradict their allegations that Facebook owed some contractual duty to preserve copies of Ms. King's data.

      *Fourth*, Plaintiffs have failed to allege any damages caused by the purported breach. Plaintiffs do not articulate how Facebook caused any pecuniary harm through its application of its Terms of Service. *See Ebeid*, 2019 WL 2059662, at *8 (dismissing breach of contract claims against Facebook where "plaintiff does not allege that he was charged for ads that were not boosted" and "plaintiff's counsel [at the hearing] was unable to articulate an alternative basis for harm tied to Facebook's alleged failure to adequately boost plaintiff's posts").

      Instead, Plaintiffs allege that they were harmed when Ms. King's Facebook account was permanently disabled and ask for widespread injunctive relief that would require Facebook to reinstate her Facebook account. FAC ¶¶ 26, 53 (asking the court to order that Facebook "reinstate the King Facebook Account in toto" [*sic*]). Plaintiffs define harm as "emotional distress, extreme emotional distress, serious emotional distress, and severe emotional distress" relating to Ms. King losing her contacts and photographs shared with family and friends. *Id.* ¶ 26.

      However, under California state law, "[a]n injunction to enforce the terms of a contract may only be issued if the contract is specifically enforceable." *Golden W. Baseball Co. v. City of*

*Anaheim*, 25 Cal. App. 4th 11, 49-50 (1994) (citing Cal. Civ. Proc. Code §§ 3423(e); 526(b)(5)).

Moreover, specific performance of a contract is only available to a plaintiff if the plaintiff can

establish (1) the contract's terms are sufficiently definite; (2) consideration is adequate; (3) there

is substantial similarity of the requested performance to the contractual terms; (4) there is a

mutuality of remedies; and (5) plaintiff's legal remedy is inadequate. *Tamarind Lithography*

*Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983).

Plaintiffs fail to allege that any of these circumstances exist in the present case. First, there

is no similarity between the contract's terms and the requested performance—Plaintiffs point to

no provision in Facebook's Terms of Service requiring Facebook to maintain the content or

profiles of its users. Second, Plaintiffs allege no facts to support a conclusion that there is a

mutuality of remedies or that money damages would be inadequate. Because Plaintiffs fail to

allege facts to support their requests for an injunction or declaratory relief, they fail to assert any

cognizable remedy that would support their breach of contract claim.

**2.      Ms. King fails to state a claim for breach of the implied covenant of good faith and fair dealing (Claim 7).**

In order to establish a breach of the implied covenant of good faith and fair dealing, a

plaintiff must show: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his

obligations under the contract; (3) any conditions precedent to the defendant's performance

occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of

the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JP*

*Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

"[A] party must take on an obligation, either expressly or impliedly, before it can be said

to have acted in bad faith by not carrying it out." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110,

1117 (N.D. Cal. 2011). In other words, an implied covenant "cannot impose substantive duties or

limits on the contracting parties beyond those incorporated in the specific terms of their

agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003)

(quotation omitted). This means that the implied covenant "will not apply where no express term

exists on which to hinge an implied duty, and where there has been compliance with the

contract's express terms." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D.

1    Cal. 2010) (quoting *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal.

2    2007)); *see also Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 322 (2000) (holding that a plaintiff

3    "cannot impose substantive duties or limits on the contracting parties beyond those incorporated

4    in the specific terms of their agreement"); *Young*, 790 F. Supp. 2d at 1117 (granting motion to

5    dismiss for failure to meet this standard).

6          Here, Plaintiffs fail to satisfy this standard. Plaintiffs attempt to support their claim based

7    on two allegations. Both attempts fail. ***First***, Plaintiffs allege that Facebook breached the implied

8    covenant by "refusing to give [Ms. King] any reasonable or detailed explanation" for how her

9    account violated Facebook's Community Standards and ignoring Mr. King's "repeated" requests

10   for that information. FAC ¶ 57. But Facebook's Terms of Service contain no obligation for

11   Facebook to provide a "reasonable or detailed explanation" when it disables an account or to

12   respond to requests for such an explanation. Section 4.2, the provision governing the disabling of

13   accounts, merely states that when Facebook exercises its discretion to "take such action" to

14   disable an account, Facebook will, with some exceptions, "let you know and explain any options

15   you have to request a review." Pricer Decl., Ex. A Section 4.2. Plaintiffs admit that Facebook

16   notified Ms. King that her account was disabled and explained her options to request a review (in

17   this case, "submit more information via the Help Center" to the extent Ms. King thought her

18   account "was disabled by mistake"), and thus complied with the express terms of the agreement.

19   FAC ¶ 16. Plaintiffs' argument that the Court should create an obligation for Facebook to provide

20   a "reasonable" or "detailed" explanation is entirely extracontractual in nature, and thus an

21   improper attempt to "impose substantive duties or limits on the contracting parties beyond those

22   incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 322. This is the

23   prototypical situation in which the implied covenant "will not apply," namely, "where no express

24   term exists on which to hinge an implied duty" and "where there has been compliance with the

25   contract's express terms." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d at 770.[1]

26          ***Second***, Plaintiffs allege a breach of the implied covenant because Facebook allegedly

27

28   _____

     [1] Moreover, Facebook did provide an explanation. Facebook explained that Ms. King's "account
     was disabled because it did not follow our Community Standards." FAC ¶ 17.

"destroy[ed] all of the material, data, and content of the King Facebook account." FAC ¶ 58. But Plaintiffs have failed to identify a contractual obligation to maintain Ms. King's content; indeed, as discussed above, the Terms of Service explicitly provided Facebook the power to disable Ms. King's account and to remove content. As with the request for a detailed explanation for disabling Ms. King's account, Plaintiffs' attempt to impose a duty related to maintaining Ms. King's data is not based on any "express term . . . on which to hinge an implied duty." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d at 770. Plaintiffs "cannot impose substantive duties or limits" on Facebook not in the Terms of Service. *Guz*, 24 Cal. 4th at 322.

In addition, Ms. King agreed in Section 4.3 of the Terms of Service that "under no circumstance will [Facebook] be liable to [Ms. King] for any lost profits, revenues, information, or ***data***." Pricer Decl., Ex. A Section 4.3 (emphasis added). That provision bars any liability based on the alleged loss of the content on her Facebook account. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) (dismissing breach of contract and implied covenant claims based on Section 4.3).

### 3. Ms. King fails to state a claim for intentional infliction of emotional distress (Claim 3).

To state a claim for intentional infliction of emotional distress ("IIED") under California law, a plaintiff must plead: "(1) defendant's extreme and outrageous conduct; (2) that defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress; (3) that plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 883-84 (N.D. Cal. 2010).

Ms. King's claim fails for three reasons. ***First***, she does not plead facts sufficient to meet the high standard for "outrageous" conduct. Outrageous conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 884 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)). Plaintiffs allege in conclusory fashion that "Facebook's conduct in permanently disabling [Ms. King's] Facebook Account, in refusing to state how the King Facebook Account allegedly failed to 'follow' Facebook's 'Community Standards,' in refusing to discuss the matter with [Ms. King], and in destroying all of the material,

1  data, and content contained on, with, or under the King Facebook Account was outrageous." FAC

2  ¶ 40. But "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"

3  do not meet the standard of outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009).

4  Moreover, courts have held that a "private party simply choosing to not provide access to its

5  platform"—the very basis of Plaintiffs' claims here—"does not meet the threshold of extreme

6  conduct exceeding the boundaries of a civilized society." *Perez v. LinkedIn Corp.*, 2021 WL

7  519379, at *3 (N.D. Cal. Feb. 5, 2021) (quotations omitted); *see also Schneider v. TRW, Inc.*, 938

8  F.2d 986, 992 (9th Cir. 1991) (holding that incidents perceived to display mere rudeness or

9  insensitivity do not rise to the level of outrageous conduct). Far from being "extreme and

10  outrageous," the alleged conduct is expressly permitted by Facebook's Terms of Service and

11  federal law (as explained above and below).

12      ***Second***, Plaintiffs have not shown that Facebook intended to cause, or recklessly

13  disregarded, the probability of causing, emotional distress. Plaintiffs allege that an unidentified

14  Facebook employee said that Ms. King's situation might not be "very satisfactory," FAC ¶ 19,

15  but they do not allege any facts indicating that Facebook acted intentionally or recklessly

16  disregarded the probability of causing severe emotional distress. *See Caraccioli*, 167 F. Supp. 3d

17  at 1064 (dismissing claim for intentional infliction of emotional distress where the plaintiff failed

18  to show that Facebook acted intentionally in initially declining to remove content); *Christensen v.*

19  *Super. Ct.*, 54 Cal. 3d 868, 903 (1991) (providing that, to prove intentional infliction of emotional

20  distress, the plaintiff must show the defendant acted intentionally).

21      ***Finally***, Plaintiffs fail to allege that they have met the "high bar" for suffering "severe or

22  extreme emotional distress" as a matter of law. *Hughes*, 46 Cal. 4th at 1051. Ms. King alleges that

23  losing access to her Facebook contacts and content has caused her "great distress, embarrassment,

24  damage to her reputation, and humiliation[.]" *See* FAC ¶ 25. She also alleges "intense and

25  enduring" feelings of "anger, fear, horror, shock, grief, shame, humiliation, embarrassment,

26  chagrin, disappointment, worry, nervousness, anxiety, and nausea" associated with Facebook's

27  actions. *Id.* ¶ 26. But, under California law, distress must be so substantial "that no reasonable

28  [man] in [a] civilized society should be expected to endure it." *Potter*, 6 Cal. 4th at 1004.

1749245

Plaintiffs' conclusory allegations simply do not rise to this level. *See Hughes*, 46 Cal. 4th at 1051 ("discomfort, worry, anxiety, upset stomach, concern, and agitation" was insufficiently severe); *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1029 (N.D. Cal. 2012) (finding that besides alleging "concerns," the plaintiff "[had] not alleged any facts to support [] conclusory allegation[s] that she suffered severe emotional distress").

### 4. Ms. King fails to state a claim for negligent infliction of emotional distress (Claim 4).

"Negligent infliction of emotional distress is a species of negligence, which under California law has three elements: (1) the defendant owed a legal duty to use due care, (2) a breach of that duty, and (3) the breach was the proximate or legal cause of the resulting injury." *Caraccioli*, 167 F. Supp. 3d at 1064 (citing *Huggins v. Longs Drugs Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993), and *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996)).

Plaintiffs' cause of action for negligent infliction of emotional distress ("NIED") fails for two reasons.

***First***, the FAC fails to plead any plausible basis for a duty owed by Facebook to Ms. King to not disable her account. It is Plaintiffs' burden to plead facts establishing the existence of a duty. *See Tuttle v. Chase Ins. Life & Annuity Co.*, 2007 WL 2790359, at *3-4 (N.D. Cal. Sept. 20, 2007). But the FAC fails to allege that Facebook owed Plaintiffs any duty whatsoever, much less any facts that would establish the existence of such a duty. *Foley v. Bates*, 2007 WL 1430096, at *7 (N.D. Cal. May 14, 2007).

Furthermore, under California law, there is no duty to avoid negligently causing emotional distress to another. *Potter*, 6 Cal. 4th at 984-85 ("[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.").

To the extent that Plaintiffs' theory is that a duty to Ms. King arises out of Facebook's Terms of Service, courts have rejected that theory. *See, e.g., Young*, 2010 WL 4269304, at *3;

*Caraccioli*, 167 F. Supp. 3d at 1064 (holding that plaintiff could not base claims for negligent infliction of emotional distress on Facebook's Terms of Service). A contractual duty cannot serve as the basis for a tort claim absent an independent duty (which, as discussed above, is nonexistent here). *See Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (holding that "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law"). Moreover, as discussed above, the contract that Plaintiffs agreed to in fact gives Facebook the right to remove content and does not require it to maintain content.

**Second**, Ms. King has not alleged the sort of injury that is necessary for this claim. "California generally authorizes emotional distress damages only in cases of physical injury[,]" or "in certain specialized cases such as mishandling of remains, false diagnosis of potentially fatal disease, witnessing the injury of close relative, or negligence involving quasi-fiduciary duties in the cases of bad faith denial of insurance coverage." *Davis v. Maryland Bank*, 2002 WL 32713429, at *3 (N.D. Cal. June 19, 2002). Plaintiffs have not alleged anything of the sort.

### 5. Ms. King fails to state a claim for conversion (Claim 8).

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 221 (2003) (quoting *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543-44 (1996)).

Plaintiffs fail to allege facts sufficient to satisfy this standard. **First**, Plaintiffs fail to adequately plead that Facebook committed any "wrongful" act, which is necessary to maintain a claim for conversion. *See Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (conversion requires wrongful act). Plaintiffs allege that Facebook "destroyed the entire content of the King Facebook account[.]" FAC ¶ 64. But they do not allege facts suggesting any "destr[uction]" separate from Facebook's disabling of Ms. King's account. To the extent Plaintiffs' allegations of "destr[uction]" of Ms. King's data are based on the disabling of her account, Facebook's Terms of Service states that it may, in its sole discretion, determine that a

user "clearly, seriously or repeatedly breached" its Terms of Service, and "may suspend or permanently disable access to [the user's] account." Pricer Decl., Ex. A Section 4.2. Far from being "wrongful," Ms. King consented to the Terms of Service, and Facebook's power to permanently disable her access to her account. Ms. King's "consent negatives the wrongful element of the defendant's act, and prevents the existence of a tort," including the tort of "conversion." *Tavernier v. Maes*, 242 Cal. App. 2d 532, 552 (1966); *see CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1079 (S.D. Cal. 2010) (dismissing the plaintiffs' conversion claim because they "failed to plausibly allege that Defendant wrongfully exercised dominion over [their] property" based on the terms of the underlying contracts).

To the extent that Plaintiffs allege some separate, unidentified act of "destroying" Ms. King's data, they fail to provide any supporting facts, and, in any event, that conduct is likewise not wrongful under Facebook's Terms of Service. Facebook's right to "permanently disable access to your account" necessarily encompassed the power to eliminate Ms. King's access to data and content associated with her account. In addition, Ms. King explicitly agreed to provisions allowing the removal of content from Facebook and a release of Facebook's responsibility for liability associated with her "data." *See id.*, Ex. A Sections 3.3.1 & 4.2. Facebook's alleged act of "destroying" the data associated with Ms. King's account is not "wrongful" under Facebook's Terms of Service.

***Second***, Ms. King fails to plead facts showing that she had any possessory interest in the contents of a disabled account, and so the alleged destruction of such content cannot give rise to an action for conversion. *See Spates*, 114 Cal. App. 4th at 221 (requiring "plaintiff's ownership or right to possession of the property at the time of the conversion"). The Ninth Circuit uses a three-part test to determine if a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003). Ms. King alleges the following items as the property that Facebook "destroy[ed]" when her account was disabled: personal records, photographs, "contacts with family and friends . . . and business associates," and "personal and business information." FAC

¶ 63. To the extent Ms. King ever had a "legitimate claim to exclusivity" over these contents of her Facebook account, once Facebook permanently disabled that account pursuant to the provisions of the Terms of Service, she no longer had any such legitimate claim to exclusivity. Ms. King, in fact, contractually agreed that, in such circumstances, she could be entirely ***excluded*** from accessing her account, and the content it contains. Pricer Decl., Ex. A Section 4.2. Plaintiffs cannot allege conversion of content for which Ms. King no longer had a possessory interest. *See Spates*, 114 Cal. App. 4th at 221 (requiring "ownership or right to possession of the property at the time of the conversion").

     ***Finally***, Ms. King has released any claim based on "conversion" of her data. Ms. King agreed in Section 4.3 of the Terms of Service that "under no circumstance will [Facebook] be liable to [Ms. King] for any lost profits, revenues, information, or ***data***." Pricer Decl., Ex. A Section 4.3 (emphasis added). That provision bars any liability based on the alleged loss of the content on her Facebook account. *See Grayson v. 7-Eleven, Inc.*, 2013 WL 1187010, at *6 (S.D. Cal. Mar. 21, 2013) (upholding release of conversion claim).

### 6.     Ms. King has no cognizable claim under the CDA (Claim 2).

     Finally, Plaintiffs fail to allege a claim under Section 230(c)(2) of the CDA because no such claim exists. Section 230(c)(2), like Section 230(c)(1), is an *immunity provision*, not a cause of action. *See, e.g.*, *Atkinson v. Facebook Inc.*, No. 20-cv-05546-RS, ECF No. 75, at 8-9 (N.D. Cal. Dec. 7, 2020) ("Atkinson does not, and cannot, point to any textual support in § 230 for a private right of action."), attached as Ex. A to Declaration of Jason George; *Belknap v. Alphabet, Inc.*, 504 F. Supp. 3d 1156, 1160-61 (D. Or. Dec. 1, 2020) ("Case law is unanimous that a private right of action is not available under the Communications Decency Act"); *see also Gonzalez v. Google LLC*, 2 F.4th 871, 915 (9th Cir. 2021) (in a case involving Facebook, holding that Section 230(c)(2) "eliminated liability for actions taken to restrict access to objectionable material"); *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) (stating that Section 230(c)(2) "provides an *additional* shield from liability" over Section 230(c)(1)). This is clear from the text of the statute. Section 230(c)(2) of the CDA states, in relevant part: "(2) No provider or user of an interactive computer service shall be held liable on account of-- (A) any action voluntarily taken

in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected[.]" 47 U.S.C. § 230(c)(2)(A). Nothing in this text creates a cause of action. The "good faith" requirement of Section 230(c)(2)(A) affects only the extent of the immunity granted by Section 230, and Facebook has not raised Section 230(c)(2) in this motion.

### 7.    Ms. King fails to state a claim for declaratory and injunctive relief (Claim 6).

"'[D]eclaratory relief is not an independent cause of action'—only a remedy." *Fish v. Aviation*, 2019 WL 690286, at *6 (N.D. Cal. Feb. 19, 2019) (citation omitted); *see also Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court. . . . It only permits the district court to adopt a specific remedy when jurisdiction exists."). "Likewise, a request for injunctive relief is not a standalone claim, but rather requires some other substantive basis for liability." *Fish*, 2019 WL 690286, at *6. Because Ms. King fails to state a claim on any cause of action, the court should "dismiss[] h[er] demand for these remedies." *Id.* at *7.

### 8.    Mr. King's claims also fail (Claim 5).

Mr. King's claims of intentional and/or negligent infliction of emotional distress fail for the same reasons that those claims fail for Ms. King, as detailed above. In addition to the bases stated there, Plaintiffs fail to allege any independent duty, or facts that could establish a duty, to prevent harm to a third-party like Mr. King that could be the basis of an NIED claim against him. *Foley*, 2007 WL 1430096, at *7. As to the IIED claim, in addition to the reasons discussed above, Mr. King's claim fails because the alleged actions "must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen*, 54 Cal. 3d at 903. Though Mr. King allegedly contacted a Facebook employee after the fact regarding his mother's account, Plaintiff fails to allege that Facebook had any knowledge of Mr. King when allegedly disabling Ms. King's account.

Mr. King's claim of loss of consortium should also be dismissed because California recognizes the tort of loss of consortium only for the spousal relationship, not for the relationship

between a parent and child. *Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274, 1283 (2012) (noting that "our state's high court has declined to expand liability for loss of consortium to nonspouse plaintiffs, such as children or parents of injured parties," and collecting authority).

In any event, Mr. King's loss of consortium claim is derivative of Ms. King's defective claims. Under California law, "a claim for loss of consortium is a derivative claim which cannot stand alone." *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 714 F. Supp. 1028, 1035 (N.D. Cal. 1989), *reversed in part on other grounds*, 960 F.2d 1401 (9th Cir. 1991); *see also Brittell v. Young*, 90 Cal. App. 3d 400, 407 n.5 (1979) (unless a valid underlying claim is stated, a plaintiff cannot state a cause of action for loss of consortium); *Hickman v. Sofamor-Danek Grp., Inc.*, 1999 WL 606690, at *2 (N.D. Cal. Feb. 17, 1999) (dismissing a plaintiff's spouse's claim for loss of consortium because it was derivative of the plaintiff's other claims); *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1237 (N.D. Cal. 2014) ("A loss of consortium claim is derivative of and dependent on the spouse's negligence action."). Because Ms. King has failed to state any claim, Mr. King's derivative loss of consortium claim also fails as a matter of law.

## B.     Plaintiffs' claims are barred by Section 230(c)(1) of the CDA.

Even if Plaintiffs had pleaded facts sufficient to state a claim against Facebook (they have not), Plaintiffs' claims fail for a second, independent reason: the claims alleged are barred as a matter of law by Section 230(c)(1) of the CDA. 47 U.S.C. § 230(c)(1). Plaintiffs seek to hold Facebook liable for removing Ms. King's content from its platforms. Section 230(c)(1) prohibits such claims. *See, e.g.*, *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009); *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863, at *1 (N.D. Cal. Oct. 2, 2020); *Ebeid*, 2019 WL 2059662, at *5; *King v. Facebook, Inc.*, 2019 WL 4221768, at *3-4 (N.D. Cal. Sept. 5, 2019).

Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider[,]" 47 U.S.C. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3).

Section 230(c)(1) "establish[es] broad federal immunity to any cause of action that would

make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal quotations and citations omitted*), opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007); *accord Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 969 (N.D. Cal. 2016). Immunity extends to activities of a service provider that involve its moderation of third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

Section 230(c)(1) immunity, "like other forms of immunity, is generally accorded effect at the first logical point in the litigation process[,]" because "immunity is an ***immunity from suit*** rather than a mere defense to liability[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quoting *Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original*); accord Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *8–9 (N.D. Cal. Oct. 26, 2011). Accordingly, courts have regularly applied Section 230(c)(1) at the pleading stage to dismiss a wide variety of claims, including the causes of action asserted here. *See, e.g.*, *Caraccioli*, 167 F. Supp. 3d at 1064–66 (breach of contract; NIED; IIED); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017) (breach of contract); *King*, 2019 WL 4221768, at *3 (same); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *3-4 (N.D. Cal. June 10, 2019) (NIED and conversion); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 322 (D.N.J. 2015) (NIED); *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *2 (N.D. Cal. July 8, 2016) (IIED).

Facebook is entitled to immunity under Section 230(c)(1) if three requirements are met: (1) it is a "provider . . . of an interactive computer service[;]" (2) the allegedly offending content was "provided by another information content provider[;]" and (3) Plaintiffs' claims treat Facebook as the "publisher" of that content. 47 U.S.C. § 230(c)(1); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *affirmed sub nom, Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017); *Ebeid*, 2019 WL 2059662, at

1   *3. The FAC reveals that all three requirements for Section 230(c)(1) immunity are met.

2            **1.**      **Facebook is a provider of an interactive computer service.**

3         The CDA defines "interactive computer service" as "any information service, system, or

4   access software provider that provides or enables computer access by multiple users to a

5   computer server[.]" 47 U.S.C. § 230(f)(2). Every court to consider whether Facebook meets this

6   definition has concluded that it does. *See e.g.*, *Ebeid*, 2019 WL 2059662, at *3; *Igbonwa v.*

7   *Facebook, Inc.*, 2018 WL 4907632, at *5 (N.D. Cal. Oct. 9, 2018); *Sikhs for Justice*, 144 F. Supp.

8   3d at 1093; *Caraccioli*, 167 F. Supp. 3d at 1065. Here, Plaintiffs themselves allege that Facebook

9   is a provider of an "interactive computer service" under 47 U.S.C. 230(f)(2). FAC ¶ 37. The first

10  requirement for Section 230(c)(1) immunity is thus met.

11           **2.**      **The content at issue was provided by someone other than Facebook.**

12        For the second requirement, the content at issue must come from an "information content

13  provider" other than Facebook. The CDA broadly defines "information content provider" as "any

14  person or entity that is responsible, in whole or in part, for the creation or development" of the

15  content at issue. 47 U.S.C. § 230(f)(3). Facebook's users, including Ms. King, fit this definition,

16  as numerous courts have held. *See, e.g.*, *Ebeid*, 2019 WL 2059662, at *4 ("Plaintiff argues that

17  the information at issue was not provided by another information content provider because

18  plaintiff himself—not some other third-party—provided the information. That argument has been

19  repeatedly rejected."); *Lancaster*, 2016 WL 3648608, at *3 (holding that plaintiff's own content

20  satisfied second prong of the CDA immunity test).

21        Here, Plaintiffs acknowledge that Ms. King, not Facebook, created and operated the

22  account. FAC ¶ 1 ("King had a Personal Account . . . with Facebook [that] she established

23  approximately ten years ago[.]"). Courts have held that such accounts constitute information

24  provided by another information content provider under Section 230. *See Brittain*, 2019 WL

25  2423375, at *4 (finding that a Twitter account qualified as "information provided by another

26  information content provider" under Section 230). Moreover, Plaintiffs' claims arise entirely out

27  of content that Ms. King allegedly created. *See, e.g.*, FAC ¶¶ 14, 17, 21, 24-26. Plaintiffs do not

28  allege that Facebook had any role in creating any of the content at issue.

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FAC
Case No. 3:21-cv-04573-EMC

1749245

Consequently, the second requirement for Section 230(c)(1) immunity is met.

### 3.   Plaintiffs' claims seek to treat Facebook as a publisher of the content at issue.

The third requirement for Section 230(c)(1) immunity is satisfied if a plaintiff's claims seek to treat the defendant as a publisher of the material at issue, *i.e.*, to "hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content[.]" *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). "[W]hat matters is not the name of the cause of action" but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02. In other words, claims based on any alleged conduct "that can be boiled down to deciding whether to exclude material that third parties seek to post online" satisfy the third requirement for immunity. *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc).

Here, each of Plaintiffs' claims is predicated on allegations that Facebook improperly disabled Ms. King's Facebook account, thereby removing content and preventing her from posting content. FAC ¶¶ 20-26, 30, 33-35, 40-41, 45-46, 48, 52-53, 57-58, 63-64.

Courts have consistently held that claims based on such allegations satisfy the publisher-treatment requirement and are therefore within the scope of Section 230(c)(1). *See, e.g., Brittain*, 2019 WL 2423375, at *3 (Section 230(c)(1) immunized Twitter's decision to suspend the plaintiff's accounts); *Ebeid*, 2019 WL 2059662, at *5 ("[Facebook's] decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct. The same is true for Facebook's on-and-off again restriction of plaintiff's use of and ability to post on the Facebook platform.") (internal quotations and citations omitted); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunized "decisions to delete [plaintiff's] user profiles"); *King*, 2019 WL 4221768, at *3 (concluding that account suspension is publisher activity immunized by Section 230); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020) (holding that Section 230 immunized Facebook from, among other things, claims for alleged breach of contract because "Plaintiffs' claims [were] based on Facebook's decision not to publish [Plaintiffs'] content" by terminating the plaintiffs' accounts); *Murphy v. Twitter, Inc.*, 60

19

Cal. App. 5th 12, 29-30 (2021) (dismissing contract-based claim under Section 230(c)(1) because, where a publisher is merely enforcing its "general policies," even if contractual in nature, a claim alleging breach of such a policy constitutes an attack on "paradigmatic editorial decisions not to publish particular content").

In sum, all three requirements for Section 230(c)(1) immunity are met, and Plaintiffs' claims are barred in their entirety.

### C.   The asserted claims should be dismissed with prejudice because further amendment would be futile.

The Court should dismiss Plaintiffs' FAC with prejudice because "any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Facebook previously filed a motion to dismiss the original Complaint and identified numerous factual and legal deficiencies in Plaintiffs' allegations. ECF No. 17. Plaintiffs then, with the benefit of Facebook's arguments, amended their Complaint. *See* FAC. Plaintiffs' FAC pleads the exact same operative facts, adding only allegations that Facebook breached specific provisions of the Terms of Service and that Facebook "destroyed" the content in Ms. King's account. Except for the new claims for breach of the implied covenant of good faith and fair dealing and conversion, the FAC asserts the identical causes of action as those in the original Complaint. And though Facebook previously argued that Section 230(c)(1), as a matter of law, bars all of Plaintiffs' claims based on Facebook's decision to disable Ms. King's account, the FAC fails to allege new facts or claims that would prevent its application to Plaintiffs' causes of action (including those for breach of the implied covenant of good faith and fair dealing and conversion). Since Plaintiffs have already had one opportunity to amend with knowledge of the defects in their pleadings, and have failed to cure those defects, further amendment would be futile. The Court should dismiss the FAC with prejudice. *See Capolupo v. Dep't of Cal. Highway Patrol*, 2021 WL 4163573, at *8 (N.D. Cal. Aug. 20, 2021) ("Despite Ms. Capolupo's opportunity to amend her original complaint, the FAC contains the same host of deficiencies that the Court identified in its earlier order. The Court therefore concludes that further amendment would be futile.")

## IV.    CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the FAC with prejudice.

Dated: September 24, 2021                                    KEKER, VAN NEST & PETERS LLP

                                                            By:   */s/Jason George*
                                                                  MATAN SHACHAM
                                                                  JASON GEORGE

                                                                  Attorneys for Defendant
                                                                  FACEBOOK, INC

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS FAC
Case No. 3:21-cv-04573-EMC

1749245