1
2
3
4
5

KEKER, VAN NEST & PETERS LLP
MATAN SHACHAM - # 262348
mshacham@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

6
7

Attorneys for Defendant
FACEBOOK, INC

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11
12
13
14
15
16
17
18
19

ADRIENNE SEPANIAK KING and
CHRISTOPHER EDWARD SEPANIAK
KING,

Plaintiffs,

v.

FACEBOOK, INC.,

Defendant.

Case No. 3:21-cv-04573-EMC

**DEFENDANT FACEBOOK, INC.'S
REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

Date:        November 4, 2021
Time:        1:30 p.m.
Courtroom: 5

Judge:      Hon. Edward M. Chen

Date Filed: June 14, 2021

Trial Date:  None set

20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................................... 1

II. ARGUMENT............................................................................................................... 1

    A.  Plaintiffs fail to adequately plead any claim........................................................ 1

        1.  Ms. King fails to state a claim for breach of contract (Claim 1). ............... 1

        2.  Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing (Claim 7)......................................................... 6

        3.  There is no private right of action under Section 230(c)(2) of the CDA (Claim 2). .................................................................................... 7

        4.  Ms. King fails to state an IIED claim (Claim 3)........................................ 8

        5.  Ms. King fails to state a claim for negligent infliction of emotional distress (Claim 4). .................................................................................... 9

        6.  Ms. King fails to state a claim for conversion (Claim 8). ........................ 10

        7.  Plaintiffs fail to even address Facebook's challenge to their claim for declaratory and injunctive relief (Claim 6)....................................... 11

        8.  Mr. King fails to state a claim for intentional and negligent infliction of emotional distress and loss of consortium (Claim 5)............ 11

    B.  Plaintiffs' claims fail under Section 230 of the CDA.......................................... 12

        1.  Plaintiffs' attempt to categorically exclude contract-based claims from Section 230(c)(1) fails. .................................................................. 12

        2.  Plaintiffs' argument that Section 230(c)(1) does not immunize removal of content is contrary to binding authority................................. 14

        3.  The Court can properly consider Facebook's arguments on a Rule 12(b)(6) motion to dismiss. ...................................................................... 15

    C.  The Court should dismiss with prejudice. .......................................................... 15

III. CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AirWair Int'l Ltd. v. Schultz*,
  84 F. Supp. 3d 943 (N.D. Cal. 2015) .................................................................... 14

*Akey v. Placer Cnty.*,
  2015 WL 5138152 (E.D. Cal. Sept. 1, 2015) ........................................................ 11

*Appling v. State Farm Mut. Auto. Ins. Co.*,
  340 F.3d 769 (9th Cir. 2003)............................................................................... 6, 7

*Atkinson v. Facebook Inc.*,
  No. 20-cv-05546-RS, ECF No. 75 (N.D. Cal. Dec. 7, 2020)................................... 7

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ......................................................... 12, 13, 14, 15

*Bass v. City of Fremont*,
  2013 WL 891090 (N.D. Cal. Mar. 8, 2013) ............................................................ 8

*Belknap v. Alphabet, Inc.*,
  504 F. Supp. 3d 1156 (D. Or. Dec. 1, 2020) .......................................................... 7

*Ben-Shimol v. Trans World Airlines, Inc.*,
  1996 WL 40202 (N.D. Cal. Jan. 19, 1996) ........................................................... 10

*Brittain v. Twitter, Inc.*,
  2019 WL 2423375 (N.D. Cal. June 10, 2019) ...................................................... 13

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) ........................................................... 8, 13

*Davis v. Maryland Bank*,
  2002 WL 32713429 (N.D. Cal. June 19, 2002) ...................................................... 9

*Ebeid v. Facebook, Inc.*,
  2019 WL 2059662 (N.D. Cal. May 9, 2019) ........................................................... 4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008)........................................................................12, 15

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................ 13

*Garcia ex rel. Garcia v. Cnty. of Sacramento*,
  2012 WL 1605056 (E.D. Cal. May 7, 2012)......................................................... 11

*Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) ................................................................. 3

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ........................................................................... 15

*King v. Facebook, Inc.*,
    2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ..................................................... 13

*King v. Facebook, Inc.*,
    2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) ................................................. 4, 13

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016) ...................................................... 13

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ......................................................................... 8, 9

*Montes v. Rafalowski*,
    2012 WL 1595683 (N.D. Cal. May 4, 2012) ........................................................ 8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ............................................................................ 15

*Ottolini v. Bank of Am.*,
    2011 WL 3652501 (N.D. Cal. Aug. 19, 2011) ..................................................... 8

*Perez v. LinkedIn Corp.*,
    2021 WL 519379 (N.D. Cal. Feb. 5, 2021) ......................................................... 8

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ............................................................................ 15

*Sams v. Yahoo! Inc.*,
    713 F.3d 1175 (9th Cir. 2013) .......................................................................... 15

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ............................................................ 12

*Smith v. Trusted Universal Standards in Electronic Transactions, Inc.*,
    2011 WL 900096 (D.N.J. Mar. 15, 2011) ........................................................... 7

*Young v. Facebook, Inc.*,
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ...................................................... 7

**State Cases**

*Aas v. Superior Court*,
    24 Cal. 4th 627 (2000) ........................................................................................ 9

*Cross v. Facebook, Inc.*,
   14 Cal. App. 5th 190 (2017)......................................................................2, 3, 13

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) .......................................................................................... 9

*Fetto v. Facebook, Inc.*,
   No. 21-cv-01582, Order (San Mateo Sup. Ct. Sept. 8, 2021) ................................. 4

*Frangipani v. Boecker*,
   64 Cal. App. 4th 860 (1998)................................................................................... 5

*Guz v. Bechtel Nat. Inc.*,
   24 Cal. 4th 317 (2000) .......................................................................................... 6

*Locke v. Warner Bros.*,
   57 Cal. App. 4th 354 (1997)............................................................................... 6, 7

*Molien v. Kaiser Found. Hosps.*,
   27 Cal.3d 916 (1980) .......................................................................................... 10

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th 12 (2021)...............................................................................13, 14

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ............................................................................................ 8

*SCI California Funeral Servs., Inc. v. Five Bridges Found.*,
   203 Cal. App. 4th 549 (2012)................................................................................. 5

*Thing v. La Chusa*,
   48 Cal. 3d 644 (1989) ......................................................................................... 11

*Third Story Music, Inc. v. Waits*,
   41 Cal. App. 4th 798 (1995).............................................................................. 2, 3

*Wong v. Jing*,
   189 Cal. App. 4th 1354 (2010)............................................................................ 10

**Statutes**

47 U.S.C. § 230(c)(1) ............................................................................. *passim*

47 U.S.C. § 230(c)(2) ........................................................................................ 1, 7

Cal. Civil Code § 3294 .......................................................................................... 6

**Other Authorities**

*Lost*, Merriam-Webster Dictionary, https://www.merriam-
   webster.com/dictionary/lost .................................................................................. 5

1

13 Williston on Contracts § 38:21 ............................................................................................ 3

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:21-cv-04573-EMC
1750188

I.    INTRODUCTION

In their opposition, Plaintiffs Adrienne King ("Ms. King") and Christopher King ("Mr. King") admit to numerous defects in their First Amended Complaint ("FAC") and, where not admitted, fail to support any of their assertions with applicable law. The opposition:

- Concedes that current law precludes at least two of Plaintiffs' causes of action: Ms. King's claim for violation of Section 230(c)(2) (claim 2) and Mr. King's claim for loss of consortium (claim 5);

- Fails to provide any analysis of the actual language of Facebook's Terms of Service or how it supports claims for breach of contract (claim 1);

- Fails to address—and thus concedes—that Plaintiffs have not stated a claim for declaratory and injunctive relief (claim 6) and that, under current law, Section 230(c)(1) of the Communications Decency Act ("CDA") immunizes Facebook against all of Plaintiffs' non-contract-based claims (claims 2-6, 8); and

- Fails to address the numerous cases Facebook cited that show that immunity under the CDA applies to Plaintiffs' two contract-based claims (claims 1, 7).

Plaintiffs' claims thus fail for two independent reasons. *First*, Ms. King fails to state any claim on which relief can be granted for disabling Ms. King's Facebook account, including her claims based in contract, tort, and federal law. Likewise, Mr. King provides no basis for asserting claims based on his mother's account. *Second*, Plaintiffs' claims seek to hold Facebook liable for disabling Ms. King's account, that is, removing content—conduct immunized under Section 230(c)(1) of the CDA. Plaintiffs do not request leave to amend and provide no colorable argument for how they could state a claim if they were allowed to do so, and thus the Court should dismiss Plaintiffs' FAC with prejudice.

II.    ARGUMENT

A.    **Plaintiffs fail to adequately plead any claim.**

1.    **Ms. King fails to state a claim for breach of contract (Claim 1).**

*Facebook had no contractual duty to continue providing Ms. King access to Facebook.*

Plaintiffs' FAC alleges that Facebook breached Sections 3.1 and 4.2 of the Terms of Service by

FACEBOOK'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:21-cv-04573-EMC

1750188

disabling Ms. King's account. FAC ¶¶ 29-30. But Facebook's motion established that Section 3.1, the provision titled "Who can use Facebook," imposes no affirmative duty to provide continued access to Facebook's platform. *See* ECF No. 28 ("Mot.") at 2-5. Likewise, Facebook's motion established that, quite contrary to any affirmative duty to maintain Ms. King's account, Facebook's Terms of Service reserved to Facebook the discretionary power under Section 4.2 to disable an account if ***Facebook*** "determine[s] that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards." ECF No. 31, Declaration of Jenny Pricer ("Pricer Decl."), Ex. A Section 4.2.

Plaintiffs' arguments in response fail. ***First***, Plaintiffs argue that Section 3.1 provides an affirmative obligation to provide access to Facebook's Platform because it "states the requirements [Ms. King] must meet to continue to have an active account with Facebook." ECF No. 35 ("Opp.") at 3. But Plaintiffs fail to provide any analysis of the actual language of Section 3.1. That provision, while stating prerequisites for accessing Facebook, merely states that "[w]e ***try*** to make Facebook broadly available to everyone." Pricer Decl. Ex. A Section 3.1 (emphasis added). It imposes no affirmative obligation to provide users continued access to Facebook.

***Second***, Plaintiffs contend that Section 4.2 is "a promise" that does not provide Facebook discretion to permanently disable an account. Opp. at 5-6. But beyond calling Facebook's interpretation of its Terms of Service "completely fallacious," Plaintiffs provide no analysis of the plain language of Sections 4.2. Plaintiffs contend that Facebook could have, but did not, use the term "sole discretion" in its Terms of Service—but there is certainly more than one way to express that Facebook has discretionary powers, and it used one such formulation here. As noted above, Section 4.2 provides no affirmative obligation to keep an account active. Instead, it notifies users that Facebook may permanently disable an account if ***Facebook*** "determine[s] you have clearly, seriously or repeatedly breached" its Community Standards. Pricer Decl. Ex. A Section 4.2. This language expressly reserves to Facebook the power and discretion to make such determinations and to disable accounts, and Plaintiffs do not deny that Facebook made the relevant "determination" in this case.

***Third***, Plaintiffs argue in the alternative that even if Section 4.2 provided Facebook

discretion to permanently disable an account, that provision is a "satisfaction clause" that implies additional extracontractual requirements to act in "good faith" or in an "objectively reasonable" manner. Opp. at 6. But "satisfaction" clauses are inapposite. Such clauses appear in contracts where "the promise of one party is conditional on its own or the other party's satisfaction." 13 Williston on Contracts § 38:21. For example, a person may commission a piece of art to his or her satisfaction, or devices that meet requirements of certain "mechanical fitness." *Id.* In order to avoid rendering such contracts unenforceable for lack of consideration, courts imply additional "good faith" or "reasonableness" obligations to save an otherwise illusory agreement. *See id.* ("[T]he restraint that the obligation to act in good faith places on the promisor's discretion furnishes good consideration for the parties' agreement."). But "[t]he law refuses to read into contracts anything by way of implication except upon grounds of ***obvious necessity***." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 809 (1995) (emphasis added). Thus, in *Third Story Music*, because there was otherwise adequate consideration, the Court refused to alter the defendant's discretionary power not to perform. *Id.* at 808-09.

Here, Facebook has no obligation to continue providing users access to its platform on an ongoing basis. Section 4.2 thus does not implicate a promise to perform that "is conditional on [Facebook's] satisfaction." 13 Williston on Contracts § 38:21. Indeed, Plaintiffs raise no argument that Facebook's Terms of Service would constitute an illusory agreement should Facebook's power under Section 4.2 be discretionary. There is thus no basis to imply requirements that are contrary to express provisions of the Terms of Service. As courts in this district have often stated, "conduct authorized by a contract cannot give rise to a claim for breach of the agreement." *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015).

***Finally***, Plaintiffs' attempts to distinguish prior case law fail. As discussed above, an analysis of the language of Sections 3.1 and 4.2 make clear that Facebook is under no obligation to continue providing its services to users and can disable a user's account at its discretion. As many cases have previously held, Facebook's Terms of Service is structured so that even though they "'place restrictions on users' behavior,' they 'do not create affirmative obligations'" on Facebook. *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 201 (2017) (citing *Young v. Facebook,*

1  *Inc.*, 2010 WL 4269304, at *3, (N.D. Cal. Oct. 25, 2010), and *Caraccioli v. Facebook, Inc.*, 167

2  F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017)); *see also Ebeid*

3  *v. Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019); *King v. Facebook, Inc.*,

4  2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021). So in

5  *King*, for example, Judge Orrick held that a claim for retaliatory breach of contract failed because

6  Facebook had "sole discretion" to "remove content and suspend or block user accounts." *King*,

7  2019 WL 6593968, at *2.

8         Plaintiffs argue that the above-cited cases involve different factual circumstances or prior

9  versions of Facebook's Terms of Service. But these criticisms miss the mark—Facebook has

10  consistently allowed users access to its platform while reserving the right to terminate the

11  relationship at its discretion. Plaintiffs fail to identify any basis to conclude that Facebook's

12  current Terms of Service, though using alternative wording from prior versions, differs in any

13  significant respect. Indeed, Plaintiffs have not alleged any facts to suggest that Facebook's

14  manner of operating its platform has changed. These cases are thus on point and demonstrate the

15  proper interpretation of Facebook's Terms of Service. In fact, California courts agree with

16  Facebook's interpretation. *See* Supplemental Declaration of Jason George, Ex. A, *Fetto v.*

17  *Facebook, Inc.*, No. 21-cv-01582, Order (San Mateo Sup. Ct. Sept. 8, 2021) ("Facebook has the

18  discretion to remove Plaintiff's posts and suspend his account."); *see also id.* Ex. B (Complaint)

19         ***No Duty to Preserve Content.*** Plaintiffs allege that Facebook breached its contract by

20  'destroying" the content of Ms. King's account. As an initial matter, Plaintiffs conflate the idea of

21  "destroying" content with disabling access to it—and seemingly define "destroyed" as "removed,

22  made unavailable, etc." Opp. at 11. As discussed, Facebook had discretion to disable Ms. King's

23  account—part and parcel of that right is making the account unavailable.

24         In any event, Plaintiffs fail to point to any provision in Facebook's Terms of Service that

25  requires Facebook to preserve the content of Ms. King's account.[1] Plaintiffs claim a purported

26

27  _____

[1] Plaintiffs assert that "provision 2 of the TOS" allows removal of content that violates the Terms
of Service, but not other content. Opp. at 11. That argument is of no moment when Section 3.1

28  does not provide an obligation to continue providing access to Facebook's platform and Section
4.2 allows Facebook to permanently disable access to Ms. King's entire account.

"possessory interest" in her account's content, but to the extent such an interest exists, it is not based in the contractual agreement between the parties. Plaintiffs state that "provision 3 of the TOS" "recognizes a user's ownership interest in a Facebook account," Opp. at 11, but fails to cite any provision to substantiate that claim. To the extent Plaintiffs refer to Section 3.3, that provision merely states that Ms. King granted Facebook a license to reproduce content in which she already owned intellectual property rights—it does not provide a right to the specific reproductions stored on Facebook's servers. To the extent Plaintiffs refer to Section 3.1's statement that Ms. King may download "a copy of your data at any time *before* deleting your account," Pricer Decl. Ex. A Section 3.1 (emphasis added), that provision was clearly superseded once Facebook "permanently disabled access to [Ms. King's] account" under Section 4.2.

Finally, as Facebook pointed out in its Motion, Ms. King also agreed that Facebook is not liable to her "for any lost profits, revenues, information, or data." *Id.* Section 4.3. Plaintiffs argue that this provision does not apply because "lost . . . data" purportedly requires "unexpected" circumstances. Opp. at 8-9. Plaintiffs are incorrect. Section 4.3 expressly states that Facebook's liability is limited "to the fullest extent permitted by applicable law" and that "under no circumstance will we be liable to you for any lost . . . data." Pricer Decl., Ex. A Section 4.3. The plain meaning of "lost . . . data" does not require such loss to be "unexpected" as Plaintiffs contend—"lost" encompasses all circumstances where the data is "no longer possessed." *Lost*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/lost.

***No Damages***. Plaintiffs also fail to state a breach of contract claim because they assert no pecuniary damages. Plaintiffs assert that the contents of Ms. King's Facebook account had "peculiar value" to her. But a claim of peculiar value requires that "the defendant knew of such peculiar value prior to incurring liability for damages." *SCI California Funeral Servs., Inc. v. Five Bridges Found.*, 203 Cal. App. 4th 549, 573 (2012). Plaintiffs fail to allege any facts that would satisfy this requirement. And the "emotional distress" Ms. King has allegedly suffered is not compensable contract damages. *See Frangipani v. Boecker*, 64 Cal. App. 4th 860, 865 (1998) ("[T]he invariable rule [is] pronounced by a legion of cases that damages are not recoverable for mental suffering or injury to reputation resulting from breach of contract.") (citations and internal

quotation marks omitted). Finally, Plaintiffs claim that their allegation of "bad faith" could support a finding of punitive damages, Opp. at 11, but punitive damages are unavailable on a claim for breach of contract, *see* Cal. Civil Code § 3294; 1 Witkin, Summary 11th Contracts § 901 ("[P]unitive damages are never recoverable for breach of contract, no matter how wilful [sic] or malicious."). Plaintiffs fail to contest, and thus concede, that specific performance is not an available remedy. Plaintiffs thus fail to allege any cognizable damages for breach of contract.

### 2.   Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing (Claim 7).

Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing. California law is clear that an implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003); *see also Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 322 (2000) (same). Facebook's Terms of Service, as discussed, contains *no* substantive duty on Facebook to provide continued access to its platform and, in fact, explicitly reserves to Facebook the discretion to disable accounts. Plaintiffs cannot impose the additional, contradictory duties they propose with the implied covenant.

Rather than address the cases Facebook cited in its opening brief on this issue, Plaintiffs instead quote *Locke v. Warner Bros.*, 57 Cal. App. 4th 354, 358 (1997), with essentially no analysis. But *Locke* is distinguishable. That case involved a "pay or play" directing deal, where a movie studio could either choose to develop one of the plaintiff's movie ideas or pay the plaintiff's director fee. The plaintiff alleged that Warner "refus[ed] to consider Locke's proposed projects," thus rendering the "play" provision entirely illusory. *Locke*, 57 Cal. App. 4th at 359.

Unlike *Locke*, where the movie studio was required to consider the plaintiff's movie ideas in order to effectuate the express "play" side of the agreement, Plaintiffs fail to point to *any* express obligation to Ms. King in Facebook's Terms of Service that the implied covenant would support. Plaintiffs cannot impose "substantive duties or limits" that would require Facebook to continue offering its services when there is no contractual provision requiring it to do so. *Appling*, 340 F.3d at 779. And Section 4.2 does not provide any such right to continued access—that provision gives Facebook the power to disable Ms. King's account based on its own

6

1   determination that her account does not comply with the Terms of Service. Indeed, *Locke*

2   specifically held that its holding did not apply where an agreement "expressly provide[s]" one

3   party "the right to refrain" from continuing to perform under the agreement. *See Locke*, 57 Cal.

4   App. 4th at 366 (distinguishing *Third Story Music*, 41 Cal. App. 4th at 801). Where such a

5   provision exists, it is "controlling and precludes application of any implied covenant." *Id.*

6   (quoting *Third Story Music*, 41 Cal. App. 4th at 802). The same is true here.[2]

7            **3.       There is no private right of action under Section 230(c)(2) of the CDA
                         (Claim 2).**

8            Like Section 230(c)(1), Section 230(c)(2) of the CDA is an *immunity* provision. *See, e.g.*,

9   47 U.S.C. § 230(c)(2). Plaintiffs contend that Section 230's immunity provisions imply the

10  existence of a federal cause of action where there is no immunity. But Plaintiffs concede that their

11  position is untenable, remarking that they merely brought a CDA claim to "preserve this issue for

12  the record." Opp. at 20. Indeed, Plaintiffs fail to cite any authority (only listing academic articles)

13  and do not even address Facebook's cited cases holding that Section 230(c)(2) does ***not*** provide a

14  private right of action. *See, e.g.*, Declaration of Jason George, ECF No. 29, Ex. A, *Atkinson v.*

15  *Facebook Inc.*, No. 20-cv-05546-RS, ECF No. 75, at 8-9 (N.D. Cal. Dec. 7, 2020) ("Atkinson

16  does not, and cannot, point to any textual support in § 230 for a private right of action."); *Belknap*

17  *v. Alphabet, Inc.*, 504 F. Supp. 3d 1156, 1160-61 (D. Or. Dec. 1, 2020) ("Case law is unanimous

18  that a private right of action is not available under the Communications Decency Act"). This

19  claim must be dismissed.

20

21

22  ---
    [2] Plaintiffs also cite *Young*, 790 F. Supp. 2d at 1118, and *Smith v. Trusted Universal Standards in*
23  *Electronic Transactions, Inc.*, 2011 WL 900096, at *8 (D.N.J. Mar. 15, 2011). But *Young* merely
    states that "it is at least conceivable" that an implied covenant might apply to Facebook. That
24  discussion was entirely hypothetical in nature and did not address the above-cited case law that
    precludes imposing additional "substantive duties or limits" to a contract through the implied
25  covenant. *Appling*, 340 F.3d at 779. In addition, *Young* dismissed the implied covenant claim
    because Facebook had provided an explanation for shutting down the account—here, too,
26  Facebook explained that it had determined that Ms. King's account was disabled because "it did
    not follow our Community Standards." FAC ¶ 17. As to *Smith*, Plaintiffs' extensive block quote
27  is entirely inapposite. *See* Opp. at 8. That out-of-circuit district court case involved an
    interpretation of the "good faith" provision of Section 230(c)(2)(A) of the CDA (not present in
28  Section 230(c)(1)). The "good faith" standard in a statute has no bearing on Facebook's Terms of
    Service, which do not reference "good faith."

                                                    7
1750188

1

### 4.     Ms. King fails to state an IIED claim (Claim 3).

2

Facebook's motion argued that Ms. King's claim for intentional infliction of emotion

3 distress ("IIED") failed because Plaintiffs fail to adequately allege that (1) Facebook's conduct

4 was "outrageous," *see, e.g., Perez v. LinkedIn Corp.*, 2021 WL 519379, at *3 (N.D. Cal. Feb. 5,

5 2021); (2) Facebook intended to cause or recklessly disregarded the probability of causing

6 emotional distress, *see, e.g., Caraccioli*, 167 F. Supp. 3d at 1064; and (3) Ms. King suffered the

7 "high bar" of "severe or extreme emotional distress" as a matter of law, *see, e.g., Potter v.*

8 *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993). *See* Mot. at 9-11.

9

Plaintiffs fail to address any of the case law that Facebook cited in its motion. Instead,

10 Plaintiffs state that Ms. King was "publically embarrassed and humiliated publically [sic]" and

11 assert, without citation, that questions of "outrageous" conduct and "severe emotional distress"

12 are matters "for a jury to decide." Opp. at 20. That is not the case. A court must evaluate whether

13 the facts pleaded in a complaint "plausibly suggest an entitlement to relief." *Levitt v. Yelp! Inc.*,

14 765 F.3d 1123, 1135 (9th Cir. 2014); *see also, e.g., Montes v. Rafalowski*, 2012 WL 1595683, at

15 *6 (N.D. Cal. May 4, 2012) ("Whether a defendant's conduct can reasonably be found to be

16 outrageous is a question of law that must initially be determined by the court") (citation omitted).

17 Meanwhile, a "private party simply choosing to not provide access to its platform" does not, as a

18 matter of law, "meet the threshold of extreme conduct exceeding the boundaries of a civilized

19 society." *Perez*, 2021 WL 519379, at *3. In addition, mere embarrassment at a disabled account is

20 not so substantial "that no reasonable" person in a "civilized society should be expected to endure

21 it." *Potter*, 6 Cal. 4th at 1004. Courts in this district regularly dismiss IIED claims at the 12(b)(6)

22 stage where the plaintiff has failed to allege sufficiently outrageous conduct or severe emotional

23 distress. *See, e.g., Bass v. City of Fremont*, 2013 WL 891090, at *7 (N.D. Cal. Mar. 8, 2013)

24 (Henderson, J.) (dismissing IIED claim based on an arrest); *Ottolini v. Bank of Am.*, 2011 WL

25 3652501, at *12 (N.D. Cal. Aug. 19, 2011) (Chen, J.) (dismissing with prejudice IIED cause of

26 action based on foreclosure of home).

27

As to Facebook's intent, Plaintiffs assert that "[Ms. King] is entitled to discovery" "before

28 Facebook's motive is assessed." *Id.* at 21. But Plaintiffs have the obligation to include "sufficient

allegations of underlying facts" that "plausibly suggest an entitlement to relief." *Levitt*, 765 F.3d at 1135 (citation omitted). Plaintiffs have simply failed to allege any facts that would suggest that Facebook intended to cause or recklessly disregarded the probability of causing emotional distress to Ms. King when disabling her access to her account.

### 5.      Ms. King fails to state a claim for negligent infliction of emotional distress (Claim 4).

Facebook's motion argued that Ms. King's claim for negligent infliction of emotional distress ("NIED") failed because Plaintiffs failed to (1) allege a legal duty to maintain Ms. King's account or to avoid causing her emotional distress; and (2) allege the sort of injury necessary to recover damages for emotional distress, *see Davis v. Maryland Bank*, 2002 WL 32713429, at *3 (N.D. Cal. June 19, 2002). Mot. at 11-12. In response, Plaintiffs argue that Plaintiffs had a duty to protect the content on Ms. King's account and "return" it to her "independent of any contractual relationship between Facebook and King." Opp. at 21. Plaintiffs' argument fails.

***First***, Plaintiffs fail to allege this duty in its FAC, and now fail to cite ***any*** authority for this supposed extracontractual duty of Facebook to protect and return the content of Ms. King's account. In fact, the only authority that Plaintiffs cite in support of this duty to return Ms. King's content is Facebook's Terms of Service, which allows a user to download "a copy of your data at any time before deleting your account." Opp. at 21. But "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000). Indeed, the California Supreme Court has held that a "negligent breach of contract" is insufficient to state an independent tort claim—instead, there must be some degree of "intentional conduct." *Erlich v. Menezes*, 21 Cal. 4th 543, 553-54 (1999). Because Plaintiffs' sole basis for the alleged duty to "protect" her account is Facebook's Terms of Service, Plaintiffs fail to state an independent negligence claim.

***Second***, Ms. King's argument that emotional distress damages are available based on supposed destruction of the content of her account is faulty. Even if considered property, "[n]o California case has allowed recovery for emotional distress arising solely out of property damage." *Id.* at 554. In addition, California law requires that, to obtain emotional distress damages where no physical injury occurs, an NIED claim be based on "serious mental distress,"

*Molien v. Kaiser Found. Hosps.*, 27 Cal.3d 916, 928 (1980), which California courts require to be equivalent to "severe emotional distress" under an IIED claim, *Wong v. Jing*, 189 Cal. App. 4th 1354, 1378 (2010); *see also Ben-Shimol v. Trans World Airlines, Inc.*, 1996 WL 40202, at *4 (N.D. Cal. Jan. 19, 1996) ("The case law does require that in direct victim cases where there are no physical injuries the emotional distress be 'serious' in order to recover damages."). As discussed, Ms. King fails to meet that standard.

**Finally**, Plaintiffs have released any liability for "lost . . . data." Ms. King agreed in Section 4.3 of the Terms of Service that "under no circumstance will [Facebook] be liable to [Ms. King] for any lost profits, revenues, information, or **data**." Pricer Decl., Ex. A Section 4.3 (emphasis added). That provision bars liability based on the alleged destruction of her data.

### 6.    Ms. King fails to state a claim for conversion (Claim 8).

Facebook's motion argued that Ms. King's cause of action for conversion must be dismissed because (1) Plaintiffs fail to plead that Facebook committed any wrongful act; (2) Plaintiffs fail to plead facts showing that she had any possessory interest in her disabled account; and (3) Section 4.3 released any liability associated with lost data. Mot. at 12-14. **First**, Plaintiffs do not dispute that, to the extent that Facebook had the right to disable her account, Plaintiffs fail to state a claim. *See* Opp. at 21. Because Facebook had no obligation to continue providing access to its platform, and was authorized to disable it, Plaintiffs fail to allege any wrongful act.

**Second**, Plaintiffs misunderstand Facebook's argument regarding Ms. King's possessory interest in her account. Facebook's Terms of Service provide the ability to download the content and contacts associated with the account **before** the account was disabled. *See* Pricer Decl., Ex. A Section 3.1. By accepting the Terms, Ms. King agreed that Facebook could disable her account if it found she had violated the Terms of Service. *Id.* Section 4.2. She cannot now claim a legal right to access the account based on the tort of conversion.

**Finally**, Plaintiffs do not dispute that Ms. King could contractually release Facebook's conversion liability. Plaintiffs' sole argument is that "lost" data does not encompass the alleged "destruction" of Ms. King's data. As discussed, this provision encompasses Ms. King's data.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 7.    Plaintiffs fail to even address Facebook's challenge to their claim for declaratory and injunctive relief (Claim 6).

Plaintiffs fail to contest—and thus concede—that her claim for declaratory and injunctive relief should be dismissed to the extent her other claims are dismissed. *See* Mot. at 15 (citing *Fish v. Aviation*, 2019 WL 690286, at *6 (N.D. Cal. Feb. 19, 2019)).

### 8.    Mr. King fails to state a claim for intentional and negligent infliction of emotional distress and loss of consortium (Claim 5).

Mr. King fails to state a claim for IIED or NIED. For IIED, as with Ms. King, Plaintiffs fail to allege that Facebook's conduct—disabling a Facebook account—was outrageous. In addition, Plaintiffs' allegations of Mr. King's supposed "emotional distress" are entirely conclusory, without any supporting facts. *See* FAC ¶ 49. Nor have Plaintiffs alleged any facts from which it could be concluded that Facebook intended or recklessly disregarded the probability of Mr. King suffering emotional distress.

For Plaintiffs' NIED claim, Plaintiffs now rely on a "bystander" rather than "direct victim" theory. To allege a bystander claim, Plaintiffs must allege that the plaintiff "(1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." *Thing v. La Chusa*, 48 Cal. 3d 644, 667-68 (1989). But Plaintiffs fail to allege that Mr. King witnessed Ms. King when she was imminently threatened with, or actually suffered, a physical injury, which courts have required of bystander claims. *See Garcia ex rel. Garcia v. Cnty. of Sacramento*, 2012 WL 1605056, at *6 (E.D. Cal. May 7, 2012) (requiring "physical injury," and collecting cases); *Akey v. Placer Cnty.*, 2015 WL 5138152, at *8 (E.D. Cal. Sept. 1, 2015) (dismissing where no "threat of imminent physical injury"). Plaintiffs also fail to allege that Mr. King perceived the alleged "injury producing event"—Facebook's disabling of Ms. King's account—or that he was aware that it was causing Ms. King the alleged harm. And as discussed, Plaintiffs' allegations regarding Mr. King are conclusory and do not establish "serious" emotional distress.

As to the loss of consortium claim, Plaintiffs expressly concede that "[u]nder present

11

1750188

California law," there is no parent-child loss of consortium claim. Opp. at 22.

### B.   Plaintiffs' claims fail under Section 230 of the CDA.

Facebook's motion established the three requirements for Section 230(c)(1) immunity, namely, that (1) Facebook is a "provider . . . of an interactive computer service[;]" (2) the removed content was "provided by another information content provider[;]" and (3) Plaintiffs' claims treat Facebook as a "publisher." 47 U.S.C. § 230(c)(1); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd sub nom, Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017).

In opposition, Plaintiffs fail to contest—and thus concede—that all three factors of this test are satisfied for the six non-contract-based claims Plaintiffs assert (claims 2-6 and 8). Nor could Plaintiffs contest that they are satisfied:  Plaintiffs alleged in the FAC that Facebook is a provider of an "interactive computer service," FAC ¶ 37, and that Ms. King, not Facebook, operated her account as the relevant "information content provider," *see* FAC ¶ 1. It is also undisputed that Plaintiffs' claims are based on Facebook's decision to remove the content of Ms. King's account. Thus, at least for the six non-contract-based claims, Plaintiffs seek to treat Facebook as a publisher, and this test is satisfied. *See, e.g., Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").

Plaintiffs' opposition argues only three points, namely, that (1) for Plaintiffs' breach of contract and implied covenant claims (claims 1 and 7) only, the third factor of the Section 230(c)(1) test is not satisfied; (2) binding Ninth Circuit authority incorrectly interprets the CDA; and (3) Facebook cannot raise CDA immunity on a motion to dismiss. Each argument fails.

#### 1.   Plaintiffs' attempt to categorically exclude contract-based claims from Section 230(c)(1) fails.

Plaintiffs, relying on *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1098 (9th Cir. 2009), contend that Section 230(c)(1) "does not provide immunity for claims of breach of contract" because, rather than treating Facebook as a "publisher," Plaintiffs' contract claims treat Facebook as a counterparty to a contract. Opp. at 11. This argument is unavailing.

1    *Barnes* did not establish a categorical rule that contract-based claims can never be subject

2    to Section 230(c)(1) immunity. Although *Barnes* held that the promissory estoppel claim in that

3    case did not satisfy the third prong of the Section 230(c)(1) test, it also explicitly stated that "what

4    matters is not the ***name*** of the cause of action . . .what matters is whether the cause of action

5    inherently requires the court to treat the defendant as the 'publisher or speaker' of content

6    provided by another." *Barnes*, 570 F.3d at 1101-02 (emphasis added). Following this guidance,

7    numerous decisions subsequent to *Barnes*—none of which Plaintiffs even addressed in their

8    opposition—have held that breach of contract and implied covenant claims may be barred by

9    Section 230(c)(1) immunity when the claims seek to treat the defendant as a publisher. *See, e.g.*,

10   *King v. Facebook, Inc.*, 2019 WL 4221768, at *4 (N.D. Cal. Sept. 5, 2019) (dismissing breach of

11   contract claims based on Section 230(c)(1)), *aff'd*, 845 F. App'x 691 (9th Cir. 2021).[3] For

12   example, in *King*, Judge Orrick dismissed a claim for breach of contract in the second amended

13   complaint where "King's allegations rest[ed] on treatment of speakers." *King*, 2019 WL 4221768,

14   at *4. The Ninth Circuit affirmed. *King*, 845 F. App'x at 692. Likewise, in *Federal Agency of*

15   *News*, Judge Koh held that the plaintiff's claim for breach of the implied covenant was barred by

16   Section 230(c)(1) because it was "predicated on Facebook's decision to remove FAN's account,

17   postings, and content." 432 F. Supp. 3d at 1119-20. *Barnes*, the court held—far from exempting

18   the claim under Section 230(c)(1)—"unambiguously establishes" that it "treat[s] Facebook as a

19   publisher," and thus Facebook was immune. *Id.* at 1120.

20        *Barnes*'s determination that the promissory estoppel claim in that case was not subject to

21   Section 230(c)(1) immunity is not generalizable to every contract cause of action. In that case, the

22   plaintiff's ex-boyfriend had posted false profiles to Yahoo's website. *Barnes*, 570 F.3d at 1098.

23   After the issue received media attention, Yahoo's director of communications called Barnes and

24   told her she would "personally walk the statements over to the division responsible for stopping

25

26   [3] *See also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29-30 (2021) (sustaining demurrer of
     contract-based claims pursuant to Section 230(c)(1) immunity); *Brittain v. Twitter, Inc.*, 2019 WL
27   2423375, at *3-4 (N.D. Cal. June 10, 2019) (same); *Caraccioli*, 167 F. Supp. 3d at 1064-66
     (same); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119-20 (N.D. Cal.
28   2020) (same); *Cross*, 14 Cal. App. 5th at 206 (same); *Lancaster v. Alphabet Inc.,* 2016 WL
     3648608, at *5 (N.D. Cal. July 8, 2016) (same)

1750188

1   unauthorized profiles and they would take care of it." *Id.* at 1099. Yahoo did not remove the

2   profiles, and Barnes sued based on promissory estoppel. *Id.* at 1099, 1103. The *Barnes* court held

3   that Yahoo's specific promise to remove content sought to hold Yahoo liable for its separate

4   explicit promise to remove the content showing a "manifest intention to be legally obligated to do

5   something"—not its discretionary role as a publisher. *Id.* at 1107. The *Barnes* court also held that

6   the specific promise could be viewed as waiving Section 230(c)(1) immunity. *Id.* at 1108-09.

7        The claims here are distinguishable from *Barnes*. Plaintiffs have not alleged any specific

8   promise—whether in or out of a contract—to not disable Ms. King's account. At most, Plaintiffs'

9   claims assert that Facebook must be "reasonable" and act "in good faith" when deciding to

10  remove content. Opp. at 6-7. Such a claim seeking to limit the *manner* in which a publishing

11  decision was made, still seeks to treat Facebook as a publisher—a party that makes decisions

12  regarding the removal of content.[4] Other courts have distinguished *Barnes* on similar grounds.

13  For example, in *Murphy*, the California Court of Appeal held that Section 230(c)(1) immunity

14  applied to a breach of contract claim asserting improper enforcement of Twitter's "Hateful

15  Conduct Policy." *Murphy*, 60 Cal. App. 5th at 29-30. That court observed that *Barnes* exempted

16  from its reach "general monitoring polic[ies]," and that claims based on Twitter's decision to

17  "remov[e] [the plaintiff's] tweets and suspend[] her account amount to attacks on Twitter's

18  interpretation and enforcement of its own general policies rather than breach of a specific

19  promise." *Id.* So too here, Plaintiffs' contract-based claims do not seek to enforce a specific

20  promise, but rather challenge Facebook's "interpretation and enforcement of its own general

21  policies." Section 230(c)(1) immunizes Facebook to claims based on such conduct.

22              **2.    Plaintiffs' argument that Section 230(c)(1) does not immunize removal
                       of content is contrary to binding authority.**

23       Plaintiffs contend that appellate courts, including the Ninth Circuit, have misinterpreted

24  Section 230(c)(1) of the CDA by allowing it to provide immunity for claims challenging the

25  removal of content. Opp. at 14-19. Plaintiffs concede that this argument is contrary to binding

26

27  ───────────────
    [4] Plaintiffs' waiver theory also fails. Plaintiffs contend that Facebook's Terms of Service contain
28  ***implied*** duties of "good faith" and "objective reasonableness." Such implied duties do not show
    the "intentional relinquishment" of Section 230(c)(1) immunity. *Cf. AirWair Int'l Ltd. v. Schultz*,
    84 F. Supp. 3d 943, 957 (N.D. Cal. 2015).

authority. *See id.* at 19; *see also Fair Hous. Council*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). The Court should thus reject this argument.

### 3.   The Court can properly consider Facebook's arguments on a Rule 12(b)(6) motion to dismiss.

Plaintiffs argue that Facebook's motion is an "improper 12(b)(6) motion" because it is premised on "affirmative defenses." But the Ninth Circuit has held that "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). In any event, to the extent Plaintiffs refer to Section 230(c)(1) immunity, courts regularly apply the CDA on a motion to dismiss. *See, e.g.*, *Barnes*, 570 F.3d at 1102. Indeed, courts consider Section 230(c)(1) to provide *immunity from suit*, and thus such immunity is properly considered at the "first logical point in the litigation process," *i.e.*, on a motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).

### C.   The Court should dismiss with prejudice.

Plaintiffs have already amended their complaint once with knowledge of the deficiencies Facebook identified in the original complaint—and Plaintiffs failed to cure them. Plaintiffs, for example, failed to allege sufficient facts to state any claim in their original complaint or FAC, and propose no additional facts that could be pleaded in a second amended complaint to assist their claims. In addition, all of Plaintiffs' claims are barred by Section 230(c)(1) of the CDA, and the Ninth Circuit has held that the CDA cannot be "circumvent[ed]" with "creative pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016). It is thus apparent that "any proposed amendment would be futile" and that the Court should dismiss with prejudice. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

### III.   CONCLUSION

The Court should grant Facebook's motion to dismiss the FAC with prejudice.

1    Dated: October 15, 2021                    KEKER, VAN NEST & PETERS LLP

2

3                                        By:    /s/Jason George
                                               MATAN SHACHAM
4                                              JASON GEORGE

5                                              Attorneys for Defendant
                                               FACEBOOK, INC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:21-cv-04573-EMC

1750188