ORRICK, HERRINGTON & SUTCLIFFE LLP
JACOB M. HEATH # 238959
jheath@orrick.com
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:     (650) 614-7321
Facsimile:     (650) 614-7401

Attorney for Defendant FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADRIENNE SEPANIAK KING, | Case No. 3:21-cv-04573-EMC |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| FACEBOOK, INC., | Date:        Thursday, March 11, 2022 |
| Defendant. | Time:        1:30 p.m. |
| | Judge:       Hon. Edward M. Chen |
| | Date Complaint Filed:   June 14, 2021 |
| | Trial Date:   None Set |

# TABLE OF CONTENTS

**Page No**.

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .........................................................................2

I.      INTRODUCTION .........................................................................................................2

II.     FACTUAL AND PROCEDRUAL BACKGROUND.....................................................3

     A.     Factual Background ..........................................................................................3

     B.     This Court dismisses Ms. King's First Amended Complaint and grants limited leave to amend ...............................................................................4

     C.     Ms. King files a Second Amended Complaint................................................5

III.    LEGAL STANDARD .....................................................................................................6

IV.    ARGUMENT .................................................................................................................6

     A.     The Court Has Already Dismissed the Breach of Contract Claim With Prejudice, Meaning Without Leave to Amend ........................................6

     B.     Specific Performance Is Not an Independent Cause of Action.............................7

     C.     Ms. King Fails To Allege Any Cognizable Remedy for Breach Of the Implied Covenant ...................................................................................8

           1.     This Court already held that Facebook has no duty to preserve user content......................................................................................8

           2.     Damages based on Ms. King's lost content are not cognizable...................9

           3.     Specific performance is unavailable .........................................................14

     D.     Alternately, This Court Lacks Jurisdiction ...........................................................17

V.     CONCLUSION...............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................6

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...................................................................9

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
718 F.3d 1006 (9th Cir. 2013) ...............................................................................13

*Carpel v. Saget Studios, Inc.*,
326 F. Supp. 1331 (E.D. Pa. 1971) ........................................................................12

*Christensen v. Northwest Airlines, Inc.*,
633 F.2d 529 (9th Cir. 1980) .................................................................................18

*Connors v. Home Loan Corp.*,
Civil No. 08cv1134-L(LSP), 2009 WL 1615989 (S.D. Cal. June 9, 2009)............7

*Darnaa, LLC v. Google LLC*,
756 F. App'x 674 (9th Cir. 2018) ............................................................................9

*Genesis Ins. Co. v. Magma Design Automation, Inc.*,
No. 5:06-CV-05526-EJD, 2017 WL 4642443 (N.D. Cal. Oct. 16, 2017) .............10

*Griffin v. Green Tree Servicing, LLC*,
166 F. Supp. 3d 1030 (C.D. Cal. 2015) ...................................................................7

*JRS Prods., Inc. v. Panasonic Commc'n Co. of N. Am.*,
C055037, 2010 WL 40132 (Cal. Ct. App. Jan. 7, 2010) .......................................11

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622 (D. Del. 2007)........................................................................15

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ...................................................................................6

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
34 Cal. 4th 960 (Cal. 2004)....................................................................................13

*Lewis v. YouTube, LLC*,
244 Cal. App. 4th 118 (2015).............................................................................9, 14

*McMahon v. Craig*,
176 Cal. App. 4th 222 (2009)................................................................................13

i

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir.2008) ......................................................................................6

*Miami Herald Publ'g Co. v. Tornillo*,
  418 U.S. 241 (1974) .................................................................................................15

*Pachinger v. MGM Grand Hotel–Las Vegas, Inc.*,
  802 F.2d 362 (9th Cir. 1986) ...................................................................................17

*Pascoe v. Morrison*,
  219 Cal. 54 (1933) .............................................................................................15, 16

*Popescu v. Jack Lalanne Fitness Ctrs.*,
  983 F.2d 1077 (9th Cir. 1992) .................................................................................18

*Smith v. Regents of Univ. of Cal.*,
  4 Cal. 4th 843 (1993) ...............................................................................................15

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
  101 Cal. App. 4th 1038 (2002) ..................................................................................8

*Vu v. Cal. Com. Club, Inc.*,
  58 Cal. App. 4th 229 (1997) .....................................................................................10

**Statutes**

28 U.S.C. § 1331 ...............................................................................................2, 3, 17

28 U.S.C. § 1367 .....................................................................................................19

Cal. Civ. Code § 3300 ..............................................................................................11

Cal. Civ. Code § 3301 ..............................................................................................11

Cal. Civ. Code § 3390 ..............................................................................................15

Cal.Civ. Code § 3355 ....................................................................................2, 12, 13

**Other Authorities**

Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3567 (3d ed.).............................19

Wright & Miller, 14AA Fed. Prac. & Proc. Juris. § 3702 (4th ed.)..........................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on March 11, 2022, or as soon thereafter as may be heard, in Courtroom 5 on the 17th Floor of the above-captioned Court, Defendant Facebook, Inc., n/k/a Meta Platforms, Inc., will and hereby does move to dismiss Plaintiff's Second Amended Complaint.  Facebook seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all of Plaintiff's claims in their entirety.

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS SAC
Case No. 3:21-cv-04573

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiff has alleged facts sufficient to support her claim for breach of the implied covenant, including cognizable damages or specific performance causally connected to Facebook's alleged failure to explain its decision to disable Plaintiff's account.

2. Whether the amount-in-controversy requirement of 28 U.S.C. § 1332(a)(1) is met, such that this Court can exercise diversity jurisdiction.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The Court's prior order permitted Ms. King to replead a single cause of action based on a single theory of liability: "breach of the implied covenant based on Facebook's failure to provide an explanation for the disabling of her account." Op. at 24. All other claims and theories of liability were dismissed with prejudice. *Id.* Ms. King's Second Amended Complaint ("SAC") fails comply with the Court's order. She attempts to revive the breach of contact claim that the Court already dismissed with prejudice; she brings a new, standalone specific performance claim; and she continues to allege that Facebook had a duty to preserve user content, even though this Court made clear that no such duty exists. This Court should reject Ms. King's effort to revive these dead claims.

Ms. King also still fails to allege a cognizable remedy that is causally connected to the one theory of liability the Court permitted her to replead. She continues to seek damages based on the peculiar value of her lost photographs and other content, even though Facebook had no duty to preserve that content in the first place and the Terms of Service specifically bar liability based on "lost … data." Declaration of J. Heath, Ex. A at 6.[1] And she fails plausibly to allege that her photos had economic value separate from their emotional value, as required to recover peculiar value under Civil Code section 3355. Finally, she has failed plausibly to allege entitlement to specific performance because this Court already dismissed with prejudice all claims based on

---

[1] All exhibits cited in this motion are exhibits to the Declaration of J. Heath In Support Of Defendant's Request for Judicial Notice. That Declaration and the corresponding Request for Judicial Notice were filed concurrently with this motion.

Facebook's supposed duty to return her data and reinstate her account.  And while there may be an implied promise to provide some additional information about the termination of her account, that implied promise falls far short of the heightened specificity required to sustain an action for specific performance.  Her implied covenant claim must therefore be dismissed.

Alternately, Ms. King's claims should be dismissed because the Court lacks subject matter jurisdiction.  Because Ms. King has failed to allege *any* cognizable damages based on Facebook's failure to provide an explanation, much less damages in excess of $75,000 as required to meet 28 U.S.C. § 1332(a)(1)'s amount-in-controversy requirement, the Court lacks diversity jurisdiction over the claims.

## II.      FACTUAL AND PROCEDRUAL BACKGROUND

### A.      Factual Background

Facebook, Inc. operates a free-to-use social-networking platform that enables users to share, promote, and view content on their Facebook pages.[2]  *See* Ex. A at 2.  Facebook's relationship with its users is governed by its Terms of Service, to which all users must agree in order to set up a Facebook account.  *Id*.

Section 4.2 of Facebook's Terms of Service provides that, when Facebook "determine[s]" that a user has "breached our Terms or Policies, including in particular our Community Standards, [Facebook] may suspend or permanently disable access to [the user's] account."  Ex. A at 5.  Section 4.2 further provides that Facebook will "let [the user] know" if his or her account is terminated and "explain any options [the user] ha[s] to request a review."  Ex. A at 4-5.  Users who want to "learn more" about "what [they] can do if [their] account has been disabled," Ex. A at 6, are directed to a help page, which explains that they can "request a review" by filling out a short online form that requests the user's "full name," "[l]ogin email address or mobile phone number," and photo ID.  Ex. B at 2, Ex. C at 2.  The review request form does not require (or permit) users to submit any other information.  Ex. C at 2.

Facebook's Terms of Service also include a limitation of liability provision that makes

---

[2]  On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.  Because Plaintiff's SAC refers to Meta as "Facebook," for ease of reference this motion does likewise.

3

clear that, "under no circumstance will [Facebook] be liable to you for any lost … data" or for "consequential, special, indirect, exemplary, punitive, or incidental damages … even if [Facebook] ha[s] been advised of the possibility of such damages."  Ex. A at 6.  Facebook's aggregate liability "will not exceed the greater of $100 or the amount you have paid us in the past twelve months."  Ex. A at 6.

Ms. King alleges that she "established" her personal Facebook account in 2008 and used it to share and discuss conservative "political material," "non-political material," and "personal information" with her network of "about 1,000 'Friends' around the world."  SAC ¶¶ 1, 10-12.  The content Ms. King posted allegedly included photos and videos taken on trips, and her accompanying commentary about her experiences.  *Id.* ¶ 24.  She "estimates" that the vacations during which the photos and videos were taken "cost her at least $100,000."  *Id.* ¶ 24.  Ms. King alleges that in November 2020, she "received a message from Facebook that her account had been 'disabled.'"  *Id.* ¶¶ 1, 13-14.  When Ms. King and her son attempted to reinstate the account, Facebook allegedly informed her that the account "did not follow our community standards" and that its "decision [to disable the account] can't be reversed."  *Id.* ¶¶ 1, 16.

### B.    This Court dismisses Ms. King's First Amended Complaint and grants limited leave to amend

Ms. King and her son sued Facebook in June 2021, *see* ECF No. 1, and filed a First Amended Complaint on September 10, 2021, *see* ECF No. 20.  The First Amended Complaint asserted several causes of action, including causes of action for violation of the Communications Decency Act ("CDA"), breach of contract, and breach of the implied covenant of good faith and fair dealing.  She premised each of her claims on Facebook's alleged disabling of her account, destruction of her content, and failure to provide her with a deeper explanation of its moderation action.  *Id.*  Facebook moved to dismiss.  ECF No. 28.

After full briefing and oral argument, this Court dismissed all but one of Ms. King's claims **with prejudice**—leaving only her cause of action for breach of the implied covenant.  *See* Op. at 24.  The Court dismissed her CDA claim "with prejudice" "because there is no private right of action under the statute.  Op. at 4.  The Court noted that dismissing the CDA claim destroyed federal question jurisdiction, but declined to "make[] any definitive ruling as to

1    whether there is diversity jurisdiction" over the state law claims.  Op. at 7 n.1.

2           As for the breach of contract and breach of the implied covenant claims, the Court

3    dismissed "with prejudice" any claim premised on  Facebook's purported "destruction of content"

4    because Facebook's Terms of Service (the contract on which both claims are based) "say nothing

5    about the duty of Facebook to retain user postings."  Op. at 12.  The Court also dismissed "with

6    prejudice" all claims, "based on Facebook's disabling of Ms. King's account" because, even if

7    Facebook had some duty to "only withdraw content … based on certain criteria," any claim

8    alleging a breach of that duty would be barred by Section 230 of the CDA.  Op. at 21-23, *see also*

9    Op. at 12-13.

10          Finally, the Court held that, while Ms. King alleged (and Section 230 permitted) a claim

11   for "breach of the implied covenant" based on Facebook's alleged "fail[ure] to give her an

12   adequate explanation as to how she purportedly violated Community Standards," Ms. King still

13   failed to state a claim because she did not allege any cognizable remedy for such a breach.  Op. at

14   14, 22.  Specifically, Ms. King "waived any claim for specific performance" by failing to address

15   it in her response brief.  Op. at 24, 16-17.  And damages were not available for the "peculiar

16   value" of "content associated with her account" because (1) "Facebook was not obligated to

17   retain her property for her," and (2) she failed to plausibly allege that her content had "economic

18   value independent of any emotional attachment" of which Facebook had notice, as required by

19   Cal. Civ. Code§ 3355.  Op. 15-16.  The Court granted Ms. King "leave to amend this ***singular***

20   ***cause of action*** with respect to damages and for specific performance … to the extent that she can

21   do so in good faith," and in a manner consistent with the other "rulings made by the Court." Op.

22   at 24 (emphasis added).

23          **C.    Ms. King files a Second Amended Complaint**

24          Ms. King filed her SAC on December 10, 2021.  ECF No. 57.  Seemingly ignoring the

25   words "with prejudice" in this Court's Order, the SAC asserts three causes of action for breach of

26   contract, breach of the implied covenant, and specific performance, SAC ¶¶ 27-45, and continues

27   to allege that Facebook had a duty to maintain Ms. King's content.  SAC ¶ 26.

28          As for remedies, Ms. King still seeks damages based on her loss of the photographs and

other content uploaded to her Facebook account.  SAC ¶ 24.  She now suggests that the economic value of the lost content is equal to the cost of "recreat[ing]" that content by taking new vacations to the various international locales represented in her photos, a cost Ms. King estimates to be "at least $100,000."  SAC ¶ 24.  And she asserts that Facebook, because it is the "custodian" of data on its platform, "was aware" of the content on Ms. King's account and "could easily have determined the value of [the content] to [Ms. King]."  SAC ¶ 25.  As to specific performance, Ms. King requests an order directing Facebook to "provide … an explanation of why the [account] was disabled so that [Ms. King] can seek appropriate appeal and review," to "reestablish" Ms. King's account (including her contact information and posts on other accounts), and to provide her with "unlimited access to all of the [account] data, material, and content."  SAC ¶¶ 3, 45.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008).  In conducting a Rule 12(b)(6) analysis, the court may consider the complaint, material relied upon in the complaint, and material subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–69 (9th Cir. 2001).  The court must generally accept "well-pleaded factual allegations" as true, but need not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678-79.

## IV.    ARGUMENT

### A.    The Court Has Already Dismissed the Breach of Contract Claim With Prejudice, Meaning Without Leave to Amend

In dismissing the FAC, this Court made clear that Ms. King could replead only her claim for breach of the implied covenant, and only insofar as it was based on a single theory of liability—*i.e.*, "Facebook's failure to provide an explanation for the disabling of her account." Op. at 24.  Ms. King ignored the Court's ruling, including its designation of the dismissal as "with prejudice," and asserted three causes of action—Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Specific Performance—advancing theories of

6

1    liability this Court already rejected.  Because the breach of contract claim was already dismissed

2    with prejudice, the Court need not consider it further here.  *See Connors v. Home Loan Corp.*,

3    Civil No. 08cv1134-L(LSP), 2009 WL 1615989, at *5 (S.D. Cal. June 9, 2009) ("[O]nce a claim

4    has been dismissed with prejudice, plaintiff cannot reassert the same claim in an amended

5    complaint.").  To the extent the Court nonetheless considers Ms. King's breach of contract claim,

6    that claim fails for the same reasons identified in the Court's prior order.

7        Ms. King alleges that Facebook "breached paragraphs 3.1 and 4.2 of the [Terms of

8    Service]" in three ways: (1) by "disabling the King Facebook Account," (2) by failing to

9    "provid[e] … sufficient information to allow [Ms. King] to engage in an appeal," and (3) by

10   "destroying all of the data, material, and content of the King Facebook Account."  SAC ¶ 29.  The

11   Court has already found each allegation to be insufficient to assert a breach of contract.  *First*, the

12   Court held that claims "based on Facebook's disabling of Ms. King's account" are barred by

13   Section 230.  Op. at 22.  *Second*, it held that the "express terms" of the Terms of Service do not

14   require Facebook to provide any explanation at all, so even if Ms. King can state an implied

15   covenant claim based on Facebook's supposed duty to provide a more detailed explanation, her

16   breach of contract claim fails.  Op. at 14.  And *third*, it held that nothing in the Terms of Service

17   "suggests Facebook would not destroy content (or, conversely, that Facebook had an obligation to

18   retain content)," so claims based on the destruction of content fail.  The breach of contract claim

19   in the SAC should therefore be dismissed for the reasons this Court already recognized.

20   ## B.    Specific Performance Is Not an Independent Cause of Action

21       Ms. King also alleges an independent cause of action for specific performance.  SAC ¶ 45.

22   Specific performance, however, "is a remedy for breach of contract, not an independent claim,"

23   and Ms. King's standalone specific performance claim must therefore be dismissed with

24   prejudice.  *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1055 (C.D. Cal. 2015)

25   (dismissing specific performance claim with prejudice and collecting cases).  Indeed, this Court

26   dismissed the FAC's injunctive relief and declaratory judgment claims on precisely this basis:

27   because they were "not an independent cause of action," they were dismissed "with prejudice."

28   Op.at 7.  To the extent the Court considers Ms. King's request for specific performance, it must

be construed as a remedy for her one remaining cause of action.

### C. Ms. King Fails To Allege Any Cognizable Remedy for Breach Of the Implied Covenant

This Court's prior order explained that Ms. King cannot state a claim for breach of the implied covenant unless she is able to plead "cognizable damages as a result of Facebook's conduct" or entitlement to specific performance tied to Facebook's alleged breach.  Op. at 24. That is because "damages *resulting from the breach*" is an "essential element" of a contract-based claim.  *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1060 (2002).  Ms. King's SAC fails to allege any new theory of injury or new measure of damages.  Instead, she continues to seek recovery based on her loss of "content associated with her account," in particular her loss of her vacation photos.  SAC ¶ 24.  This Court already rejected that theory of damages and it fails for the same reasons now.  Op. at 14-16.  Because Ms. King fails to allege any cognizable remedy that is causally connected to the single theory of liability this Court has not dismissed with prejudice—breach of the implied covenant based on "Facebook's failure to provide an explanation for the disabling of her account"—her claim must be dismissed.  Op. at 24.

#### 1. This Court already held that Facebook has no duty to preserve user content

Ms. King's implied covenant claim alleges that Facebook breached an implied promise "set forth in paragraph 4.2 of the [Terms of Service]" in two ways: (1) "by refusing to give [Ms. King] any reasonable or detailed explanation" as to why her account was disabled, SAC ¶ 36, and (2) by "destroying all of [her] data, material, and content," SAC ¶ 37.  Although the Court granted Ms. King limited leave to amend her implied covenant claim with respect to the first theory, it specifically rejected the second theory, holding that Facebook has no "duty … to retain user postings" and dismissing all claims based on such a duty with prejudice.  Op. at 12-14.

In light of its prior order, this Court need not consider Ms. King's new allegations asserting that Facebook promised to preserve user content in perpetuity by offering a "memorialization" feature that allows an account to be preserved after a user's death.  SAC ¶¶ 24, 26.  And even if the Court were to consider such a theory, it clearly fails.  The mere existence of a

memorialization feature does not constitute an enforceable promise by Facebook to do anything, especially when actual contractual provisions make clear that Facebook can remove user content, Ex. A at 5-6, and is not liable for any loss of data, *id.* at 6.

Ms. King's implied covenant claim must be limited to the one theory the Court allowed to go forward: "Facebook's failure to provide an explanation for the disabling of her account."  Op. at 24.

### 2.     Damages based on Ms. King's lost content are not cognizable

### a.  Facebook's Terms of Service bar damages based on lost data

Ms. King cannot establish damages based on her loss of account content (and therefore cannot state a claim) because the Terms of Service to which Ms. King agreed—and which she now seeks to enforce—expressly bar liability based on "lost … information [or] data."  Ex. A at 6.  Such "[l]imitation of liability clauses 'have long been recognized as valid in California,'" particularly in situations like this where "one party is offering a service for free to the public," and courts routinely dismiss claims on this basis.  *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124, 125 (2015) (plaintiff "cannot establish damages" in light of liability limitation provision and affirming dismissal of breach of contract claim); *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 675 (9th Cir. 2018) (affirming dismissal based on limitation of liability provision); *Bass v. Facebook, Inc*., 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) (dismissing breach of contract and implied covenant claims based on Facebook's Terms of Service).  And like the plaintiff in *Caraccioli v. Facebook, Inc*., Ms. King cannot argue that the limitation of liability provision at issue is invalid or unconscionable because it is she, "not Facebook, who asserts a breach of contract claim based on the Terms of Service." 167 F. Supp. 3d 1056, 1063-64 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (dismissing various claims based on Facebook's Terms of Service and explaining that the plaintiff must "accept the Terms of Service he incorporated into his pleading as a whole, not just those provisions that benefit his cause").  Because the Terms of Service underlying Ms. King's claim provide that Facebook will not be liable "for any lost … information [or] data," Ex. A at 6, Ms. King cannot allege damages based on her lost photos and other account content.

### b. Ms. King has not alleged facts that establish causation

A damages claim based on Ms. King's loss of her vacation photos and videos also fails because the alleged damages were not "proximately caused" by Facebook's alleged breach. *Vu v. Cal. Com. Club, Inc*., 58 Cal. App. 4th 229, 233 (1997) (dismissing implied covenant claim for failure to allege damages causally connected to the breach). The only breach at issue here is Facebook's failure to provide Ms. King with "an adequate explanation" regarding its account termination decision. *See* Op. at 14. Because that breach occurred after Ms. King lost access to her photos, it cannot be the "proximate cause" of the loss. Indeed, "[i]t is axiomatic that injury sustained prior to the purported breach of a contract cannot support a claim … because it is factually impossible for a pre-existing injury to be proximately caused by a subsequent breach." *Genesis Ins. Co. v. Magma Design Automation, Inc*., No. 5:06-CV-05526-EJD, 2017 WL 4642443, at *6 (N.D. Cal. Oct. 16, 2017) aff'd sub nom. 783 F. App'x 683 (9th Cir. 2019) (holding, as a matter of law, that company could not recover damages for expenses incurred before insurer's alleged breach).

Ms. King does not make any attempt to explain how her lost photos can be causally tied to Facebook's failure to provide additional information about its account termination decision. On the contrary, she acknowledges that receiving further explanation from Facebook would *not* result in the reinstatement of her account and recovery of her content but would only enable "an appeal or review of Facebook's action [by Facebook] and the *possible* reestablishment of the [account.]" SAC ¶ 43 (emphasis added).[3] Such hypothetical contingencies cannot be said with any "reasonable certainty" to be "proximately caused" by a breach, and cannot be recovered. *See Vu*, 58 Cal. App. 4th at 233 (dismissing a gambler's claim against a casino because the alleged damages—gambling losses—were not necessarily caused by the casino's breach of its "implied promise[] of security from cheating," as opposed to other factors like skill or luck).

Instead, Ms. King continues to allege that Facebook breached a duty to preserve user content in perpetuity—and this is the breach on which her damages claim is presumably based.

---

[3] Notably, Ms. King is wrong that further explanation would inherently allow further review. As explained below, the Terms of Service do not require Facebook to provide any review process at all for its decisions, much less the detailed, litigation-like review process Ms. King imagines.

SAC ¶¶ 24, 26, 29, 37; *supra* 10-11.  But this Court has repeatedly made clear that Facebook had no duty to preserve content and it already dismissed such claims with prejudice.  *See* Op. at 11-12, 14, 17, 24.  Ms. King therefore cannot seek damages based on the value of her lost content.

### c.   Ms. King's lost content damages are uncertain and were not within contemplation of the parties

Ms. King also fails to state a claim because her lost content damages are speculative and were not within the contemplation of the parties at the time of contracting.  *See* Cal. Civ. Code §§ 3300 (measure of damages for contract claims) and 3301 (certainty required for contract damages).

As an initial matter, the parties clearly did not contemplate damages for lost account content because, as explained above, the Terms of Service specifically provide that "under no circumstance will [Facebook] be liable to you for any lost … data."  ECF No. 19-2 at 6.  And damages based on the value of Ms. King's photographs could not have been contemplated because the contract was made before Ms. King uploaded any photographs.  *JRS Prods., Inc. v. Panasonic Commc'n Co. of N. Am.*, C055037, 2010 WL 40132 (Cal. Ct. App. Jan. 7, 2010) (concluding that all-in-one ink cartridges "could not have been within the reasonable contemplation of the parties" because they "did not exist when the agreement was signed").

Moreover, damages based on what it would cost Ms. King to recreate her vacation photos would be impermissibly speculative.  Cal. Civ. Code § 3301 (providing that contract-based damages must be "clearly ascertainable in both their nature and origin.").  Ms. King does not allege that she actually incurred any costs to recreate her photos.  Nor does she allege any intent to recreate her photos, or even to return to the places where the photos were taken.  On the contrary, she acknowledges that damages would *not* enable her to recreate the lost content because "the photographs and videos relate to spontaneous events which occurred as she was present over the years and are irreplaceable."  SAC ¶ 24.  As the court explained in *Whalen v. Villegas*, which addressed a similar theory of damages in the context of lost wedding photos, "[a]warding … the costs to re-shoot the photographs without proof of the actual costs … incurred in having the photographs re-taken would provide [Plaintiff] with a windfall" because such "damages are speculative and may never be incurred."  968 N.Y.S.2d 343, 351 (Dist. Ct. 2013);

*Carpel v. Saget Studios, Inc.*, 326 F. Supp. 1331, 1333 (E.D. Pa. 1971) (holding, in contract case against wedding photographer, that "damages based on the cost of restaging the wedding" would be too speculative). Ms. King's efforts to claim damages based on the cost of taking new photographs on new vacations are likewise speculative, and therefore fail as a matter of law.

### d. Ms. King fails to allege that her content had recoverable "peculiar value"

To the extent Ms. King is permitted to recover any damages based on her lost photos—that is, to the extent such damages are causally linked to the alleged breach, sufficiently certain, and not bared by the limitation of liability provision or the fact that "Facebook was not obligated to retain her property," Op. at 15—she still must be able to demonstrate that the photos had some measurable pecuniary value.

Ms. King seems to concede that her photos had no exchange value and instead attempts to recover the "peculiar value" of the photos under Cal. Civ. Code § 3355. As this Court previously observed, "'[p]eculiar value under Civil Code section 3355 refers to a property's unique *economic* value, not its sentimental or emotional value.'" Here, Ms. King fails to plausibly allege that "the photographs allegedly destroyed have some kind of economic value independent of any emotional attachment." Op. at 15-16 (quoting *McMahon v. Craig*, 176 Cal. App. 4th 222, 237 (2009)). That is still the case. Ms. King now alleges that her photos can be valued in an economic sense by looking to cost of "recreat[ing]" the photos by taking new vacations. SAC ¶ 24. But the high cost of the international vacations represented in Ms. King's photographs does not establish that the photographs themselves have any economic value. Nor does the value of the underlying vacations provide a reliable way to measure any economic value that exists. Moreover, the weight of Ms. King's SAC—which spends six pages describing, *inter alia*, the content of her travels and her travel-related memories (*see e.g.*, SAC ¶ 24)—leaves no doubt that she is still fundamentally trying to recover based on her *emotional* attachment to her lost photos. The cost of Ms. King's vacations does not demonstrate that her photos had "economic value independent of … emotional attachment," as required to recover under Cal. Civ. Code section 3355. Op. at 16.

Moreover, as this Court observed, Ms. King cannot seek damages based on the "peculiar

value" of her content unless "Facebook … had *notice* of the peculiar value (at least absent willful wrongdoing)."  Op. at 16 (citing Cal. Civ. Code § 3355).  Ms. King tries to satisfy the statutory notice requirement by alleging that Facebook knows about all content on its platform and "could easily have determined the value of the data, material, and content of the King Facebook Account to [Ms. King]."  SAC ¶ 25.  But the fact that third-party content is hosted on the Facebook platform is insufficient to demonstrate Facebook's actual knowledge of specific pieces of content. *C.f. UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1022 (9th Cir. 2013) ("merely hosting [content]" does not show actual knowledge of the nature of the content).  And it is absurd to suggest that Facebook—simply by virtue of hosting Ms. King's content—was aware of any unique economic value of those photos to Ms. King.[4]  Nor can Ms. King escape the statutory notice requirement by alleging that Facebook acted willfully by "refus[ing] … to follow the terms of paragraph 4.2" despite her repeated requests for more information about her account termination.  SAC ¶ 22.  Simply breaching a contract (i.e. "refus[ing] … to follow the terms of paragraph 4.2") is not enough to show willfulness, particularly in a situation like this, where the express terms of the Terms of Service did *not* require Facebook to provide additional communication, and the breach in question is of an implied promise that this Court has characterized as merely "plausible".  Op. at 14.

\* \* \*

Ms. King's photo-based damages theory therefore fails: she cannot recover any damages based on lost photos because Facebook had no duty to preserve that content, the parties did not contemplate such damages, damages to recreate lost photos are impermissibly speculative, the damages are barred by the Terms of Service, and she fails to meet the requirements of Cal. Civ. Code § 3355, as required to show the photos had any economic value at all.

---

[4] Notably, Section 3355 applies to both contract damages, like those at issue here, and tort-based damages, like those at issue in *McMahon*, 176 Cal. App. 4th at 237(addressing peculiar damages in context of negligence claim and relying on Restatement Second of Torts).  While there is significant overlap between the two types of damages, "contract damages, unlike damages in tort, do not permit recovery for unanticipated injury."  *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969 (Cal. 2004).

### 3.     Specific Performance is unavailable

This Court's prior order granted Ms. King "leave to amend [her] singular cause of action" to seek "specific performance" as a remedy for Facebook's alleged "failure to provide an explanation."  Op. at 24.  Ms. King now asks this Court to issue an order directing Facebook to (1) "provide sufficient information … about why the [account] was disabled so that [she] can request a proper appeal and review," (2) provide her with "access to the data, material, and content" of the account, and (3) "reinstate" the account, including her posts on other accounts and her name and contact information.  SAC ¶ 45[5]

To get any measure of specific performance, King must show that "'(1) the contract's terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is a mutuality of remedies; and (5) plaintiff's legal remedy is inadequate.'"  *Lewis*, 244 Cal. App. 4th at 126 (citations omitted).  She cannot meet these requirements for any of her specific performance requests.

#### a.   Ms. King's requests for account reinstatement and data access are unrelated to the breach on which her claim is based

As an initial matter, Ms. King is not entitled to specific performance directing Facebook to reinstate her account and to provide access to her account data because—just like Ms. King's damages theory—the remedy she seeks is unrelated to the breach on which her claim is based. Specific performance is available only when there is "substantial similarity of the requested performance to the contractual terms."  *Lewis*, 244 Cal. App. 4th at 126-27 (holding that "specific performance is unavailable" to enforce terms beyond the Terms of Service and dismissing with prejudice).  Ms. King's requests for account reinstatement and data access fail that test because they do not seek to enforce the implied promise underlying her one remaining claim, which this Court characterized as a promise "to provide at least some information in addition to the fact that the account has been suspended or terminated."  Op. 14.  Indeed, this Court already dismissed with prejudice all claims based on any duty by Facebook to retain Ms. King's content or reinstate

---

[5] As noted above, Ms. King wrongly alleges specific performance as a separate cause of action, and the claim can be dismissed on that basis.  Here, we assess the allegations as if they are seeking specific performance for the single claim on which the Court granted leave to amend.

Ms. King's account.  Op. at 11-12, 22, 24.  If Ms. King cannot even state a claim for breach of those supposed duties, she certainly is not entitled to the corresponding specific performance.

Requiring Facebook to reinstate King's account and account content also would upend this Court's prior Section 230 analysis and amount to compelled speech in violation of Facebook's First Amendment rights.  This Court only permitted Ms. King's implied covenant claim to proceed because it was convinced that Facebook's "implied promise [] to explain its decision" "d[id] not depend on Facebook's status as a publisher to make 'paradigmatic editorial decisions not to publish particular content.'"  Op. at 22 (quoting *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29 (2021)).  If her implied covenant claim *does* challenge Facebook's authority to make editorial decisions and *can* be remedied by an order directing Facebook to reinstate Ms. King's account, the underlying Section 230 reasoning no longer applies.  Additionally, both the United States and California Supreme Courts have recognized that requiring parties to publish particular content raises serious constitutional problems.  *E.g., Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256 (1974); *Smith v. Regents of Univ. of Cal.*, 4 Cal. 4th 843, 852 (1993).  And district courts have found specific performance unavailable as a matter of law on that basis.  *See Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 632 (D. Del. 2007) (dismissing claim seeking order requiring online service to display content against its wishes, as order would violate the First Amendment).  Any request for specific performance that requires Facebook to publish particular third-party content therefore fails as a matter of law.

### b.  The terms of any implied promise to provide a more detailed explanation lack the specificity required to support an order for specific performance

Although Ms. King's request for information related to her account termination (unlike every other measure of relief Ms. King asks for) bears at least some relation to the implied promise at issue, it nevertheless fails because specific performance is not available to enforce "terms [that] are not sufficiently certain to make the precise act which is to be done clearly ascertainable."  Cal. Civ. Code § 3390.  Indeed, specific performance requires a heightened level of certainty, above and beyond what would be required to award damages.  *Pascoe v. Morrison*, 219 Cal. 54, 58 (1933) (permitting damages claim but allowing no specific performance as a

matter of law).  This is because an action for damages "is founded upon a mere nonperformance by a defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness," while specific performance is an "affirmative" proceeding in which the court must enforce the contract's "clear, definite, and precise" terms.  *Id.*

As this Court noted, the "term" Ms. King is seeking to enforce through specific performance is a "plausible" implied promise by Facebook "to provide at least some information in addition to the fact that the account has been suspended [and] terminated."  Op. at 14.  That implied promise, assuming it exists, provides no specifics as to what additional information Facebook must provide, when Facebook must provide it, or how the parties can know whether performance is sufficient.  It also is directly contradicted by "the express terms of the Terms of Service," which, as this Court recognized, "do *not* require Facebook to provide information to a user beyond the fact that the account has been suspended or terminated."  Op. at 14.  An implied promise that contradicts express contractual terms and provides no "clearly ascertainable" standard as to what "precise act" is required cannot possibly meet the heightened level of contractual specificity required to support a specific performance remedy.

This Court's prior order suggested that the details of Facebook's supposed duty to provide "at least some information in addition to the fact that the account has been suspended or terminated" might be measured by looking at the information that is required to pursue "review … of Facebook's decision" by Facebook.  SAC ¶ 45.  But such a measure is found nowhere in the Terms of Service, and in fact conflicts with what the Terms of Service provide.  The Terms of Service do not guarantee any review process at all.  They say only that, in most (but not all) circumstances, Facebook will "let you know" if it decides to terminate your account, and will "explain *any* options you have to request a review."  Ex. A at 5 (emphasis added).  As shown by the word "any" in the latter phrase, review will not necessarily be available.  And even if the phrase "any options you have to request a review" could be construed guarantee some type of review process, it certainly does not guarantee the particular, litigation-like review process Ms. King imagines (*see* SAC ¶ 45).

Indeed, the actual review process that was available to Ms. King did not require her to

1   submit any of the information she now requests.  *See* SAC ¶ 45 (requesting an order directing

2   Facebook explain which specific pieces of content on Ms. King's account violated which specific

3   community standards, "so that King can request a proper appeal").  As explained on the help page

4   embedded within the Terms of Service, users in Ms. King's position could seek review of their

5   account termination by filling out a short online form that required only three pieces of

6   information: "full name," "login email address or mobile phone number," and photo ID.  Ex. B at

7   2, Ex. C at 2.  No aspect of the review process required—or permitted—Ms. King to provide a

8   long-form written argument about why specific pieces of content on her account did not, in fact,

9   violate Facebook's Community Standards.  She had all the information she needed to request a

10  review.

11        In short, the specific performance Ms. King requests bears no relationship to the terms

12  (express or implied) of the contract she is trying to enforce.  Thus, even if there is an implied

13  promise "to provide at least some information in addition to the fact that the account has been

14  suspended [and] terminated" that could be enforceable in an action for damages, Op. at 14, it

15  clearly fails to meet the heightened level of specificity required for specific performance.

16        **D.      Alternately, This Court Lacks Jurisdiction**

17        This Court's prior order observed that "there is no federal question jurisdiction" here due

18  to the dismissal of Ms. King's CDA claim, which was the only cause if action arising under

19  federal law.  Op. at 7 n.1; *see also* 28 U.S.C. § 1331 (federal question jurisdiction).  The Court

20  declined, at that juncture, to "mak[e] any definitive ruling as to whether there is diversity

21  jurisdiction," Op. at 7 n.1, and instead, directed Ms. King that any amended complaint "must []

22  take into account whether there is a reasonable basis to assert diversity jurisdiction (in particular,

23  the [$75,000] amount in controversy) given the rulings made by the Court herein."  Op. at 24; *see*

24  *also* 28 U.S.C. § 1332(a)(1) (diversity jurisdiction).

25        The SAC confirms the Court's suspicion that diversity jurisdiction is an issue.  While

26  courts generally defer to a plaintiff's good-faith allegations in assessing the amount in

27  controversy, dismissal is appropriate when it appears to a "legal certainty" that the plaintiff

28  cannot recover the statutory amount.  *Pachiner v. MGM Grand Hotel–Las Vegas, Inc.*, 802 F.2d

362, 364 (9th Cir. 1986) (affirming dismissal for lack of jurisdiction).  Here, for the reasons explained above, Ms. King cannot claim any damages at all.  *See supra* 11-15.  And to the extent the Court believes Ms. King can somehow recover damages for the one claim the Court has permitted to go forward—where the only alleged breach is Facebook's failure to provide Ms. King with additional information—her claim cannot possibly exceed $75,000.  *See Christensen v. Northwest Airlines, Inc.,* 633 F.2d 529, 530-531 (9th Cir. 1980) (affirming jurisdictional dismissal because a claim for embarrassment caused by discourteous airline employees could not sustain judgment exceeding the jurisdictional minimum); *Popescu v. Jack Lalanne Fitness Ctrs.*, 983 F.2d 1077 (9th Cir. 1992) (claim for emotional distress caused by phone call with health club employees could not sustain judgment exceeding the jurisdictional minimum).  Thus, it would also be appropriate to dismiss this case for lack of jurisdiction.

The Court should note, however, that Ninth Circuit law appears unsettled as to the relationship between the "legal certainty" test for determining the amount in controversy and the determination that the plaintiff failed to allege cognizable damages for purposes of Rule 12(b)(6).  While courts generally treat the "legal certainty" test as "equivalent to a conclusion that as a matter of law, the jurisdictional amount cannot be recovered or, stated differently, no reasonable jury could award that amount," Wright & Miller, 14AA Fed. Prac. & Proc. Juris. § 3702 (4th ed.), recent Ninth Circuit cases, in particular *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, have adopted a more permissive approach, 599 F.3d 1102 (9th Cir. 2010) (observing that consideration of "defenses" like a limitation of liability provision at the 12(b)(1) stage would essentially require the district court to "decide the merits of the case before it could determine if it had subject matter jurisdiction").  *Id.* at 1108. Such cases suggest that complaints that fail to state cognizable damages for purposes of Rule 12(b)(6) may nevertheless meet the amount in controversy requirement, because the latter situation involves less probing inquiry.

To be clear, Ms. King's SAC does not allege $75,000 in damages under any version of the "legal certainty" test, and it is therefore subject to dismissal on jurisdictional grounds.  To the extent the Court holds that Ms. King cannot allege any cognizable damages, however, dismissal based on Rule 12(b)(6) is both permissible and desirable.

The SAC also states that, "[i]f … this Court determines that King has not pled a valid claim for at least $75,000 in damages," the Court should exercise its "discretion" to retain the case through supplemental jurisdiction.  SAC ¶ 5.  But because Ms. King's "amendment to the complaint eliminate[d] the original basis of federal jurisdiction," the discretion Ms. King seeks to invoke does not exist. Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3567 (3d ed.).  Indeed, federal courts are only permitted to exercise supplemental jurisdiction when claims over which the court does not have original jurisdiction (state law claims) are "so related to claims in the action within such original jurisdiction" (federal claims) "that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367.  Thus, a court has "discretion" to retain jurisdiction over state law claims remaining in a case after the dismissal of federal claims, but in situations like this where "the amended complaint supersedes the original complaint, … case should be treated as though the plaintiff has pleaded no basis of federal jurisdiction" and "retaining jurisdiction of the non-federal claims is improper."  13D Fed. Prac. & Proc. Juris. § 3567 (3d ed.).

## V.    CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the SAC with prejudice.


Dated:  January 28, 2022                                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                    By:   _/s/ Jacob M. Heath_
                                                          JACOB M. HEATH

                                                          Attorney for Defendant FACEBOOK, INC.