UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE SEPANIEK KING,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK INC.,<br><br>Defendant. | Case No. 21-cv-04573-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Docket No. 62 |

Adrienne Sepaniak King filed suit against Defendant Facebook, Inc. after the company disabled the account that Ms. King had with Facebook. According to Ms. King, Facebook claimed that the account was disabled because she had violated Community Standards even though she had not. Facebook also did not give specifics as to how Ms. King had violated Community Standards. Based on a prior order, Ms. King was allowed to file a second amended complaint ("SAC") to assert a single claim for breach of the implied covenant of good faith and fair dealing. Pending before the Court is Facebook's motion to dismiss the SAC. Having considered the parties' briefs as well as the oral argument of counsel, the Court hereby **GRANTS** Facebook's motion to dismiss.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Order on FAC

Previously, the Court adjudicated a motion to dismiss on the first amended complaint ("FAC") which had been filed by Ms. King and her son. *See* Docket No. 56 (Order). In the FAC, there were various causes of action, both contract and tort-based, but most of the claims were clearly meritless. The only claims that warranted more careful analysis were the claims for breach

of contract and breach of the implied covenant (claims brought by Ms. King only).

The Court noted that, as alleged, Ms. King

> had a contract with Facebook based on its Terms of Service and that Facebook breached that contract and/or the implied covenant undergirding the contract in three ways: (1) Facebook disabled her account even though she had not violated any Community Standards; (2) after disabling her account, Facebook destroyed content associated with the account; and (3) Facebook refused to give her any specifics as to how she had purportedly failed to follow Community Standards.

Docket No. 56 (Order at 11).

As to destruction of content ((2) above), the Court rejected that theory because

> Ms. King has not pointed to any provision in the Terms of Service that suggests Facebook would not destroy content (or, conversely, that Facebook had an obligation to retain content). Moreover, the destruction of content, following the disabling of an account, does not injure a user's core contractual right – the right to use Facebook's social media platform.

Docket No. 56 (Order at 11). Notably, the Court dismissed the theory of liability with prejudice on the basis of futility. *See* Docket No. 56 (Order at 12).

On the other theories ((1) and (3) above), the Court found them plausible but agreed with Facebook that Ms. King had failed to allege cognizable remedies caused by the purported breach.

This, however, would only justify a dismissal of the claims for breach of contract and breach of the implied covenant *without* prejudice. Facebook argued still that there should be a dismissal *with* prejudice because of futility – *i.e.*, it had immunity from the claims under the Communications Decency Act ("CDA"). The Court agreed in part. Specifically, it agreed that Facebook had CDA immunity "for the contract/implied covenant to the extent that claim is based on Facebook's disabling of Ms. King's account" ((1) above). Docket No. 56 (Order at 22). However, the Court did not agree that there was CDA immunity for the implied covenant claim based on the failure to provide an explanation for the disabling of Ms. King's account ((3) above).

Accordingly, at the end of the day, the Court dismissed all of the claims pled in Ms. King's FAC *with* prejudice, *except* for the implied covenant claim based on Facebook's failure to provide an explanation for the disabling of her account. *See* Docket No. 56 (Order at 24). The Court

1    allowed Ms. King to replead that claim if she could do so in good faith. *See* Docket No. 56 (Order

2    at 24) ("[T]he claim as currently pled is not viable because Ms. King has not sufficiently pled any

3    cognizable damages as a result of Facebook's conduct. Furthermore, Ms. King has waived any

4    claim for specific performance."). The Court also noted that "[a]ny amendment must also take

5    into account whether there is a reasonable basis to assert diversity jurisdiction (in particular, the

6    amount in controversy) given the rulings made by the Court herein." Docket No. 56 (Order at 24).

B.   SAC

In response to the Court order, Ms. King filed a SAC. In the operative SAC, Ms. King alleges as follows.

Ms. King had a personal account with Facebook for more than ten years until November 17, 2020, when she discovered that it had been disabled. *See* SAC ¶¶ 1, 10. Prior to the account being disabled, Ms. King had accumulated about 1,000 "friends." She had shared both political and nonpolitical information. *See* SAC ¶¶ 1, 11-12.

Ms. King discovered her Facebook account had a problem on or about November 17, 2020, when she tried to log into her account but was not successful. On November 19, she received a message from Facebook stating that her account had been disabled, but no reason was provided as to why. *See* SAC ¶¶ 1, 13-14. Below is the full message she received.

> Your Account Has Been Disabled
>
> For more information please visit the Help Center.
>
> Your account was disabled on November 17, 2020. If you think your account was disabled by mistake you can submit more information via the Help Center for up to 30 days after your account was disabled. After that, your account will be permanently disabled and you will no longer be able to request a review.

SAC ¶ 14.

Mr. King – Ms. King's son who lives with her – tried to reinstate her account. They subsequently received a message from Facebook that the account had been disabled because "'it did not follow our Community Standards. This decision can't be reversed.'" SAC ¶ 16. No specifics were provided about the purported violation of Community Standards, and, although the Kings thereafter made further inquiry, Facebook did not respond. *See* SAC ¶¶ 16-17.

3

1   Mr. King still persisted over the next few months. He received the following message

2   from Facebook on or about March 9, 2021:

> I am told that the review (I placed) was rejected and that the user (your mother) should have been told what is the policy area they were violating. Unfortunately I do not have much else to add. As for the downloading of data, it seems there should be a way to ask for your data. There should be a flow somewhere, but the person dealing with the problem was not sure what that was. Maybe a search can help? Let me know otherwise.
>
> Sorry man, sorry it took so long and sorry we don't know much more, I suppose for FB to share with me would be absurd and not proper, so I suspect I cannot help you much more than this (which I am sure is not very satisfactory) [followed by a frowning emoji]

SAC ¶ 18.

According to Ms. King, she did not violate any Facebook Community Standards. *See* SAC ¶ 19.

Based on, *inter alia*, the above allegations, Ms. King has asserted the following causes of action:

(1) Breach of contract. Ms. King alleges that Facebook breached the contract between them – specifically, Facebook's Terms of Service ("TOS") – by (a) disabling her Facebook account, (b) failing to provide her with information to allow her to "appeal" Facebook's decision to disable her account, and (3) destroying all content in her account. *See* SAC ¶ 29.

(2) Breach of the implied covenant of good faith and fair dealing. Ms. King alleges that Facebook breached the implied covenant by failing to sufficiently explain how she had purportedly violated Community Standards and/or by failing to provide information about how she had purportedly violated Community Standards. *See* SAC ¶ 36. In addition, Facebook breached the implied covenant by destroying all content in her account. *See* SAC ¶ 37.

(3) Specific performance. Ms. King asks the Court to order Facebook to take certain action: (a) to provide sufficient information about why her account was disabled; (b) to provide her with access to the content on her account so that she can make a full

4

accounting of the damages she has suffered; (c) to reinstate her account; (d) to reinstate her posts (both on her account and on the accounts of others); and (e) to reinstate her name and contact information on Facebook.com.  *See* SAC ¶ 45.

Ms. King does not seek specific performance alone as a remedy.  Rather, she also seeks damages.  Ms. King alleges that she has suffered damages in excess of $75,000 as a result of Facebook's conduct.  According to Ms. King, she has suffered, in fact, at least $100,000 in damages because, over the ten years she has had a Facebook account, she posted on Facebook pictures of trips that she has taken over the years (including at least ten international trips), and, when Facebook disabled her account, her photos – along with commentary she provided on the photos and comments made on those photos by her hundreds of Facebook friends – were destroyed.  *See* SAC ¶ 24.

> [Ms. King] estimates that each [international] trip cost an average of $10,000 (some significantly more because they lasted for several weeks each) so that it would cost her at least $100,000 to recreate all her photographs of these places and people she met and re-experience all of these places and people, not to mention the thousands of hours KING spent selecting hundreds of photographs from thousands of photographs to upload to her Facebook Account and making comments regarding the photographs when the events were fresh in her mind.

SAC ¶ 24.

## II.   DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

5

*Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B.  Claims for Breach of Contract and Specific Performance

As noted above, Ms. King has asserted three causes of action in her SAC: (1) breach of contract, (2) breach of the implied covenant, and (3) specific performance. The first and third causes of action are dismissed because the Court allowed Ms. King to replead a claim for breach of the implied covenant only.

Furthermore, there are merit-based reasons to dismiss the first and third causes of action. Regarding (3), specific performance may be a remedy for the claim for breach of the implied covenant, but it is not an independent cause of action. *See e.g. Murj, Inc. v. Rhythm Mgmt. Grp., PLLC*, No. 5:21-CV-00072-EJD, 2021 WL 5507170, at *5 (N.D. Cal. Nov. 24, 2021) ("[S]pecific performance is not an independent cause of action under California law, but is instead a remedy for breach of contract."). As for (1), as the Court previously noted, the express terms of the contract simply state that Facebook would inform a user if her account was suspended or terminated. *See* Docket No. 56 (Order at 14). The contract did not expressly promise that an explanation would be provided. Thus, Ms. King has at most only a claim for breach of the implied covenant, not the contract itself.[1]

---

[1] In the SAC, Ms. King seems to suggest that the Court should reconsider the dismissal of her breach of contract claim. *See* SAC ¶ 26 (alleging that "FACEBOOK has claimed that its TOS does not guarantee that [it] will preserve the content of [its] user accounts, but this is not true" because (1) its "business model, and one of the attractions about FACEBOOK for [its] users[] is that FACEBOOK will preserve user content during the lifetime of the users," (2) because ¶ 4.2 of the TOS promises "that an account will be disabled and account's content made unavailable (destroyed), only if a user breaches the TOS according to the standard set forth by FACEBOOK in paragraph 4.2," (3) because Facebook "guarantees preservation of user content by promising to

1     Accordingly, the Court focuses on Ms. King's claim for breach of the implied covenant.

2   C.   Claim for Breach of the Implied Covenant

3     As the Court previously noted,

> [e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement. Simply stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose.

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (internal quotation marks omitted); *see also Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013) (stating that "'the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract'") (emphasis omitted). That being said, "[t]he implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Id.*

The Court dismissed the implied covenant claim as pled in the FAC because Ms. King failed to plead cognizable damages and failed to address Facebook's arguments as to why specific performance was not warranted. In the SAC, Ms. King has attempted to address those deficiencies. The Court addresses the request for damages first.

1.   Causation

Facebook argues first that Ms. King has failed to allege viable damages because she is claiming damages based on the destruction of her photos and related content but that injury is not causally related to the alleged breach of the failure to provide an explanation why her account was disabled. The Court agrees. In contract-based cases, damages must be "proximately caused by the

---

provide an appeal and review process in paragraph 4.2," and (4) because Facebook "provides for preservation of user content by providing . . . for a 'memorialization page' even after a user is deceased"). To the extent Ms. King is seeking reconsideration, her request for relief is denied. She has not shown, *e.g.*, that, "in the exercise of reasonable diligence[,] [she] did not know [of] such fact[s] . . . at the time of the [prior] order." Civ. L.R. 7-9(b)(1).

7

defendant's breach." *Vu v. California Com. Club, Inc.,* 58 Cal. App. 4th 229, 233 (1997). Here, Ms. King has failed to show that the destruction of her photos is related to Facebook's failure to provide a sufficient explanation as to why her account was disabled.[2] *Cf. id.* at 235 (finding that plaintiffs' claim for damages were based on speculation). Instead, Ms. King appears to attempt to revive her dismissed claims for wrongful termination of her account and destruction of contents. This Court previously held that the contract between Facebook and Ms. King did not require Facebook to preserve her content. It will not revisit that holding. Any asserted claim for breach of the implied covenant is not only unrelated to the claim this Court said it might allow, but the claim here would contradict the express terms of the contract. Accordingly, Ms. King's claim for damages must be dismissed.

### 2. General v. Special Damages

Even if causation were not an issue, Ms. King still would fare no better.

> "Contractual damages are of two types – general damages (sometimes called direct damages) and special damages (sometimes called consequential damages). [¶] . . . [¶] General damages are often characterized as those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach. Because general damages are a natural and necessary consequence of a contract breach, they are often said to be within the contemplation of the parties, meaning that because their occurrence is sufficiently predictable the parties at the time of contracting are 'deemed' to have contemplated them. [¶] . . . [¶] Unlike general damages, special damages are those losses that do not arise directly and inevitably from any similar breach of any similar agreement. Instead, they are secondary or derivative losses arising from circumstances that are particular to the contract or to the parties. Special damages are recoverable if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test). Special damages 'will not be presumed from the mere breach' but represent loss that 'occurred by reason of injuries following from' the breach."

*Schellinger Bros. v. Cotter*, 2 Cal. App. 5th 984, 1010 (2016); *see also Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004).

---

[2] Ms. King's contention that if she could obtain an explanation why her account was disabled would lead to Facebook reversing that decision and accepting responsibility for damages for destruction of her photos relies on a highly speculative chain of events.

8

In the instant case, the damages Ms. King seeks are not general damages – *i.e.*, damages that flow directly and necessarily from Facebook's alleged breach. At best, they are highly unpredictable special damages. Special damages are recoverable only "if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test)." *Schellinger*, 2 Cal. App. 5th at 1010.

Here, Ms. King has failed to show that either the subjective or objective test has been satisfied. Ms. King did not actually communicate to Facebook that she was using her account as a photo repository and that she did not otherwise retain her photos elsewhere as one normally would. Nor is there any indication that Facebook actually knew that Ms. King was using her account as a photo repository. Finally, Ms. King's suggestion that Facebook should have known that she was using her account as a photo repository – because it "was more convenient and permanent and did not involve storing photo albums and preserving physical photographs," SAC ¶ 24 – strains credulity. Arguably, Facebook should have known that Ms. King would post photos on her account. However, nothing suggests Facebook should have known that she would not maintain her photos elsewhere (whether as hard copies or digital copies saved onto a hard drive, on a phone, flash drive, or in the cloud), especially given that the photos were of great personal value to her (so much so that she planned on compiling them into a memoir of her life). *See* SAC ¶ 24. Certainly, there is no suggestion that Facebook markets itself as a photo repository. And the fact that Facebook has a "memorialization" feature for people who have died can hardly be considered the same thing as a photo storage.

Accordingly, Ms. King's special damages are not recoverable as a matter of law. The Court also notes that, even if the damages were theoretically recoverable, Ms. King would run into another obstacle – namely, the limitation of liability provision in the TOS. That provision states as follows:

> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent

9

> permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content). [¶] We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and **under no circumstance will we be liable to you for any** lost profits, revenues, information, or data, or **consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Facebook Products, even if we have been advised of the possibility of such damages**. Our aggregate liability arising out of or relating to these Terms or the Facebook Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

TOS ¶ 3 (emphasis added). The limitation of liability provision expressly bars Ms. King's claim for special damages, and Ms. King has not challenged the validity of that provision. *See, e.g.*, *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.,* 209 Cal. App. 4th 1118, 1126 (2012) ("With respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable . . . .").

        3.     <u>Peculiar Value</u>

Even if Ms. King could overcome the above, her claim for damages would still falter for yet another reason. As the Court previously noted, although a plaintiff may obtain damages based on peculiar value, the peculiar value must still represent economic value and not personal value. *See* Docket No. 56 (Order at 15). Here, the allegations of the SAC suggest that the value of the photos is personal in nature. *See, e.g.*, SAC ¶ 24 (estimating the damages based on the cost to "recreate all her photographs of these places and people she met and re-experience all of these places and people" along with the "thousands of hours KING spent selecting hundreds of photographs from thousands of photographs to upload to her Facebook Account and making comments regarding the photographs when the events were fresh in her mind[;]" but nonetheless remarking that much of her content "relate[s] to spontaneous events which occurred as she was present over the years and [is] irreplaceable."). The statements she made at the hearing – asserting that the value of the photos was not just the photos themselves but also the comments she made

1   for the photos and then the comments that her friends posted on the photos – underscores that that
2   is actually the case.
3           Furthermore, even putting this problem aside, Ms. King has failed to show that she is
4   entitled to peculiar value because peculiar value is available only where the defendant had prior
5   notice of the peculiar value or otherwise was a willful wrongdoer.  *See* Docket No. 56 (Order at
6   15); *see also* Cal. Civ Code § 3355 ("Where certain property has a peculiar value to a person
7   recovering damages for deprivation thereof, or injury thereto, that may be deemed to be its value
8   against one who had notice thereof before incurring a liability to damages in respect thereof, or
9   against a willful wrongdoer.").  As indicated above, there is nothing to indicate that Facebook had
10  prior notice of the peculiar value of the photos.  In addition, Facebook cannot be said to have been
11  a willful wrongdoer when the contract did not require it to preserve any content of its users.
12          Finally, Facebook raises a fair argument that the value claimed by Ms. King is speculative
13  in nature and therefore not recoverable.  *See, e.g.*, *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
14  249 F.3d 958, 962 (9th Cir. 2001) (denying damages because they were "too speculative to satisfy
15  California's longstanding reasonable certainty requirement" and noting that "California case law []
16  require[s] that damages not be speculative or, conversely, that they be proved to a reasonable
17  certainty").
18          Accordingly, there are multiple reasons why Ms. King has failed to allege any cognizable
19  damages as a result of the alleged breach of the implied covenant.

20  D.     <u>Subject Matter Jurisdiction</u>

21          Because Ms. King does not have a viable claim for damages, the Court lacks diversity
22  jurisdiction over her claim for breach of the implied covenant.  The amount in controversy has not
23  been met.  *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil
24  actions where the matter in controversy exceeds the sum or value of $75,000 . . .").  The Court
25  acknowledges that there must be a legal certainty that damages do not exceed $75,000 in order for
26  it to hold that diversity jurisdiction is lacking.  *See Geographic Expeditions, Inc. v. Estate of*
27  *Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (stating that the amount in controversy alleged by the
28  plaintiff generally controls and that, "'[t]o justify dismissal, it must appear to a legal certainty that

11

the claim is really for less than the jurisdictional amount'"; "the 'legal certainty' standard . . . means a federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount'"). Even though this is a high standard, it has been met in the instant case for the reasons stated above. *See Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (noting that the legal certainty test is met "'1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction'"). Ms. King has failed to establish any damages, much less $75,000 in damages.

Ms. King argues still that the Court may exercise supplemental jurisdiction over her state law claim. She notes that, even if damages are not available as a remedy, she has also asked for specific performance. Specific performance alone on a state law claim would not satisfy diversity unless the plaintiff alleges that the cost of specific performance would amount to over $75,000. A plaintiff can allege that specific performance would cause either party to lose or gain over $75,000. *See* Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 405 (9th Cir. 1996). Here, Plaintiff alleges no such thing and it is clear that neither the cost nor the benefit of specific performance would exceed $75,000.

She also points out that her prior complaint contained a federal claim which gave rise to federal question jurisdiction, even though that claim was ultimately dismissed. The Court does not opine on whether specific performance is viable remedy for Ms. King. (Facebook contends it is not.) Even assuming specific performance is a possibility, the Court has discretion to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (providing that a court may decline supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"). Because the Court has dismissed the only claim over which it had original jurisdiction (the federal claim) and litigation is still in the early stages, the Court finds it proper to decline supplemental jurisdiction in the case at bar. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) (indicating that, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by

12

1   dismissing the case without prejudice"). The Court therefore dismisses Ms. King's case but
2   without prejudice.

### III.   CONCLUSION

For the foregoing reasons, the Court grants Facebook's motion to dismiss. The dismissal is without prejudice to her pursuit of the claim in state court for her request for specific performance based on her claim for breach of the implied covenant in failing to explain why her account was disabled. All other claims are dismissed with prejudice.

This order disposes of Docket No. 62. The Clerk of the Court is directed to enter judgment and close the case.

**IT IS SO ORDERED**.

Dated: April 20, 2022

_____
EDWARD M. CHEN
United States District Judge